**The STATE of Ohio, Appellant,**

**v.**

**THOMPSON, Appellee.\***

[Cite as *State v. Thompson* (1995), 103 Ohio App.3d 498.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA94–12–101.

Decided June 12, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1418, 655 N.E.2d 738.

**500**

*Timothy A. Oliver,* Warren County Prosecuting Attorney, and *Rachel A. Hutzel,* Assistant Prosecuting Attorney, for appellant.

*Rittgers & Mengle* and *W. Andrew Hasselbach,* for appellee.

KOEHLER, Judge.

On August 1, 1994, defendant-appellee, William Thompson, was indicted by the Warren County Grand Jury on one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(4). Following a hearing held on November 23, 1994, the trial court granted appellee's motion to suppress evidence obtained from a search of his person, of an automobile, and from appellee's statements during an interview at the Franklin Police Station. The state appeals from the suppression order and we affirm.

On June 24, 1994, the Warren County Drug Task Force set up a controlled drug buy at 14 Lynn Street in Franklin, where appellee lived with his parents. Appellee sold one Delaudid pill to a confidential informant, who was wired and using marked money. The transaction was observed by task force Detective Rick Thacker and Officer J.C. Pennington, who saw appellee and the informant standing between two vehicles in a lot next to 14 Lynn Street. The officers saw appellee "inside and around" a white Ford van. They did not see appellee produce anything out of the van or out of the other vehicle, a red Ford Escort.

After verifying that the informant was missing some of the marked money and had the pill in his possession, Thacker and Pennington along with two uniformed Franklin officers, approached appellee as he was about to enter his parent's house. They informed appellee that he was not under arrest, but that they wanted to talk to him about the pills and guns in the vehicles. The officers asked for appellee's cooperation, said they knew he had health problems, and "didn't want to take him to jail." Thacker searched appellee and seized his car keys and $105 in cash, some of it the marked money used by the informant. The officers told appellee that they knew the drugs were "coming out of the Escort and he had the keys to it." Detective Thacker testified that since it was raining and because the officers were aware of appellee's medical problems (appellee stated that he has diabetes and pancreatitis), appellee was placed in the back of the police cruiser. Appellee then signed a consent to search form for the Escort and the van. At some point, the officers ran a license check and determined that neither vehicle was registered to appellee. A subsequent search of the Escort, enabled by appellee's keys, revealed a handgun, $500 in cash, and a variety of pills in unmarked prescription bottles.

The officers took appellee to the Franklin Police Station, again telling him that he was not under arrest. A tape-recorded interview was conducted with appellee, who was not advised of his *Miranda* rights. After the interview, police took appellee back to his home on Lynn Street. About a month later, appellee was indicted by the grand jury and served with an order to appear in the Warren

County Common Pleas Court. The state raises three assignments of error from the trial court's grant of appellee's motion to suppress:

"Assignment of Error No. 1:

"The trial court erred in suppressing defendant's statements where defendant was not in custody.

"Assignment of Error No. 2:

"Alternatively, the trial court erred in suppressing the evidence found on the defendant's person.

"Assignment of Error No. 3:

"The trial court erred in suppressing the evidence obtained. from the abandoned vehicles."

In its first assignment of error, the state argues that appellee voluntarily accompanied police officers to the station, was advised that he was not under arrest, and was questioned briefly and informally by two police officers. Therefore, the state concludes, appellee was not in custody and, as a result, was not within the *Miranda* rule.

The trial court assumes the role of fact finder in a hearing on a motion to suppress evidence. *State v. Lewis* (1992), 78 Ohio App.3d 518, 521, 605 N.E.2d 451, 453. A reviewing court will not disturb the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts· as true, a reviewing court determines as a matter of law whether they meet the appropriate legal standard. *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498, 502.

A suspect subjected to a custodial police interrogation·must be warned of his constitutional rights in the absence of a clear, intelligent waiver of those rights. *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–707. The ultimate inquiry is whether there is a "formal arrest or restraint on movement" of the type associated with a formal arrest. *State v. Warrell* (1987), 41 Ohio App.3d 286, 287, 534 N.E.2d 1237, 1238, citing *California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520; 77 L.Ed.2d 1275, 1279. In determining whether there has been such a restraint, the inquiry is how a reasonable man in the suspect's position would have understood his situation. *Id.*

In this case, appellee was advised that he was not under arrest, but the officers told him they knew about the drugs and wanted his cooperation. Appellee was told that the officers did not want to have to take him to jail. Thacker searched appellee and seized his car keys and cash. Appellee testified that he believed he

would be arrested if he did not cooperate. Appellee said, "When you're put up against a cruiser and shaken down you're under arrest."

Appellee was taken to the police station, about two miles away, in the back of the police cruiser. During the ensuing interview, appellee was not told that he was free to leave and was not advised of his *Miranda* rights. Appellee was dependent on police to take him home and expressed concern to the officers about needing an insulin shot.

The trial court concluded that the police officers' actions "ran contrary" to their verbal indications to appellee that he was not under arrest, and that those statements could not "circumvent the *Miranda* obligation" in this instance. We find, upon a review of the record and in light of the evidence noted above, that there is substantial evidence to support the trial court's ruling. Appellant's first assignment of error is overruled.

 In its second assignment of error, the state argues that if the trial court determined that appellee was in custody, then the police seizure of appellee was an arrest and not a *Terry* stop. The state argues that after the police officers observed the drug transaction, they had probable cause to arrest appellee. Therefore, the physical search conducted in the interest of the officers' safety slightly prior to a formal arrest was lawful.

 A warrant is not required for a search incident to a valid arrest. *State v. Rice* (1982), 69 Ohio St.2d 422, 428, 23 O.O.3d 374, 378–379, 433 N.E.2d 175, 180, citing *Michigan v. DeFillippo* (1979), 443 U.S. 31, 35, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343, 348. The search may precede an arrest if the search is based upon probable cause to believe that a crime has been committed and the formal arrest quickly follows the challenged search. *State v. Call* (1965), 8 Ohio App.2d 277, 285, 37 O.O.2d 274, 278–279, 220 N.E.2d 130, 136–137; *Rawlings v. Kentucky* (1980), 448 U.S. 98, 110–111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633, 645–646.

The above case law assumes that the search coincides with a formal arrest or that an arrest follows on the heels of the search. In this case, there was no arrest. A determination that an individual was subject to a custodial interrogation for purposes of the *Miranda* requirement is not the equivalent of a formal arrest. There is no evidence that any formal action was taken against appellee until he was indicted by the grand jury some five weeks after the drug buy and was served at his residence with an order to appear in court. Thus, the state's argument that a warrantless search of appellee's person was justified under the search incident to arrest exception to the warrant requirement is not well taken.

 Nor can the search be upheld as a valid *Terry* investigative stop. Where a police officer has a reasonable, articulable suspicion that an individual is engaged in criminal activity, the officer may make a limited search of the person's

outer clothing in an attempt to discover weapons which might be used to assault him. *Terry v. Ohio* (1968), 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909.

As noted by the trial court in this case, the search of appellee's person went beyond the scope of a *Terry* stop and frisk. The seizure of appellee's money and car keys was a constitutional violation and cannot be upheld under *Terry, supra.* Appellant's second assignment of error is overruled.

■ In its third assignment of error, the state first argues that appellee lacks standing to consent to the search of the vehicles because they are not his property, he claims not to know whose they are, and they are essentially abandoned. The state also argues that appellee voluntarily signed a consent form for a search of the vehicles.

■ Evidence found as the fruit of an unconstitutional search may be excluded. *State v. Goodlow* (1992), 84 Ohio App.3d 529, 533, 617 N.E.2d 720, 723. In this case, the officers searched the vehicles by using the car keys seized during the search of appellee's person. We have concluded that the trial court did not err in finding that the physical search of appellee was conducted in violation of his constitutional rights. The evidence seized from the vehicles flowed from that prior unconstitutional search and therefore must also be excluded. Appellant's third assignment of error is overruled.

*Judgment affirmed.*

WALSH, P.J., concurs.

YOUNG, J., concurs in part and dissents in part.

WILLIAM W. YOUNG, Judge, concurring in part and dissenting in part.

I respectfully disagree with the majority as to their ruling on appellant's third assignment of error.

The evidence showed that appellee denied any interest in the vehicles in question, did not know to whom the vehicles belonged, and asserted that the vehicles were abandoned. The evidence further shows that appellee signed a consent form for the search of the vehicles.

Given these undisputed facts, I would hold that appellee had no standing to challenge the search of the vehicles and would sustain appellant's third assignment of error.