OPINION
The State of Ohio appeals the decision of the Montgomery County Court of Common Pleas to suppress evidence seized in a search of Defendant-Appellee John Healy, Jr., pursuant to Crim R. 12 (J).
The events in question occurred at approximately 8:30 p.m. on January 1, 2000. On that evening, Officer Gregory J. Gaier was conducting surveillance on a house located at 105 Alberta Street in Dayton. Officer Gaier was part of the uniformed section of the Dayton Police Department's drug unit, which investigated reports of drug activity throughout the City of Dayton. The unit had received several reports of drug activity at 105 Alberta Street. Prior to the night in question, the police had arrested several people connected to the house for drugs.
On or about 8:30 p.m., Officer Gaier was watching the house at 105 Alberta Street and observed the Defendant enter the house. According to Officer Gaier's testimony, the Defendant then exited the house one (1) to three (3) minutes later. Officer Gaier lost sight of the Defendant as he walked away from the house. At that point, Officer Gaier relayed a description of the Defendant to the mobile police units in the area.
Officers Timothy Braun and Kevin Philips, also on duty that evening, received Officer Gaier's radio transmission in their police cruiser. Officer Braun exited the cruiser and observed an individual matching Officer Gaier's description of Defendant walking towards him on Brown Street. Officer Braun then approached the Defendant. The sequence of the following events is unclear from the record but it appears Officer Braun advised the Defendant he had been observed coming from a known drug house and that he [Officer Braun] was going to pat the Defendant down for officer safety. Officer Braun told the Defendant to keep his hands down to the side. Officer Braun grabbed the back of Defendant's pants and physically escorted the Defendant back to the police cruiser.
Officer Philips met Officer Braun and Defendant when they reached the cruiser. Officer Braun then began to pat down Defendant's outer clothing. Officer Braun testified he conducted the pat-down search because he did not know the individual and did not know if he had "any weapons or anything" on him. According to the testimony of both Officer Braun and Officer Phillips, the Defendant was not under arrest at this point but he was not free to leave. The police officers did not inform the Defendant of his Miranda rights at this point.
As Officer Braun began his pat-down search, Officer Philips conducted a field interview of the Defendant. Officer Philips began by reiterating that Defendant had been observed coming out of a known drug house. Officer Philips then asked the Defendant if he had gone into the house and the Defendant said he had. Officer Philips further asked if the Defendant had purchased crack cocaine while in the house. In response, the Defendant said he had bought fifteen (15) dollars worth of crack cocaine.
According to Officer Braun's testimony, at the moment Defendant admitted to buying crack cocaine, he touched Defendant's right front jacket pocket and felt what was "immediately apparent" to him to be a folded-up piece of paper containing crack cocaine. Officer Braun testified that even if the Defendant had not made a statement, he would have known there was a folded-up piece of paper containing crack cocaine in Defendant's jacket pocket.
Officer Braun then removed the paper and placed the Defendant under arrest. Both Officer Braun and Officer Phillips testified they never informed Defendant of his Miranda rights. According to Officer Braun, no police officer informed Defendant of Miranda rights, but Officer Phillips testified he thought another officer did Mirandize the Defendant.
After he was arrested, the Defendant was put in the backseat of the police cruiser. According to the testimony of both Officer Braun and Officer Phillips, the Defendant then made statements to them that were unsolicited by the police officers. Defendant told them he knew what was going on in the house on 105 Alberta Street and who was in the house. Defendant indicated he would be willing to help the police in their investigation. Officer Phillips testified Defendant initiated the conversation after he had asked Defendant's name and social security number. Officer Phillips also testified he was sure he asked the Defendant questions during the conversation but could not remember specifically what he asked the Defendant., Defendant was indicted on January 11, 2000 on one count of possession of a controlled substance in violation of R.C. 2925.11 (A). On January 27, 2000, Defendant filed a motion to suppress. An evidentiary hearing was held on February 18, 2000.
In its Decision, Order and Entry on March 21, 2000, the trial court determined that Officer Braun's initial stop and pat-down of the Defendant was a reasonable search under the Fourth Amendment. Officer Braun had testified he conducted the pat-down search because he was concerned for his safety. The trial court followed the rule of State v. Evans (1993), 67 Ohio St.3d 405, that Fourth Amendment intrusion concerns do not force "a police officer to forsake reasonable precautionary measures during the performance of his duties" and concluded Officer Braun's concern was reasonable. 57 Ohio St.3d at 410. The trial court found his concern for safety "was reasonable under the totality of the circumstances including the fact that it was dark and Defendant was seen leaving a known crack house."
The trial court also found, however, that Officer Braun's search of Defendant's jacket pocket violated the Defendant's Fourth Amendment rights. The trial court cited Terry v. Ohio
(1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, State v. Carter
(1994), 69 Ohio St.3d 57, and Evans, for the rule that a police officer can conduct a pat-down search of a person's outer clothing for the limited purpose of discovering weapons which the person might use to harm the police officer or others nearby. A police officer can not use the pat-down to search for evidence of a crime. The trial court found that Officer Braun's search of the Defendant's jacket went beyond the scope of a reasonable pat-down search:
 "Once Officer Braun was confident that Defendant was not armed, the justification for a search of Defendant was no longer present. A protective pat-down search does not include feeling the pockets of Defendant's jacket in search of contraband."
The trial court rejected the State's argument that Officer Braun's seizure of the crack-cocaine was reasonable under the plain feel doctrine. The trial court concluded that it could not have been immediately apparent to Officer Braun that he was touching crack-cocaine when he felt the folded-up piece of paper in Defendant's jacket pocket:
 "Defendant was in possession of less that one gram of crack cocaine which was wrapped in a piece of paper. This would amount to the size of one small piece of candy. Absent some type of manipulation by Officer Braun, there would have been no reason to speculate that the object was contraband due to its size and location in Defendant's jacket pocket."
Because the search of Defendant's jacket pocket was unreasonable under the circumstances, the trial court decided the statements the Defendant made to the police officers during the search were inadmissible under the "fruit of the poisonous tree doctrine." The trial court considered the State's contention that Defendant's statements were made simultaneously with the pat-down search and the statements therefore gave Officer Braun cause to remove the crack-cocaine, but found the statements still would have been inadmissible because Defendant was never informed of his Miranda rights. Although the State argued Defendant was not in custody at the time of the stop, the trial court cited Officer Braun's testimony that at the time of the questioning and the pat-down of Defendant he was not free to leave:
 "* * * Officer Braun's testimony indicates that this was in fact a custodial situation and any statements made are inadmissible because of the lack of the Miranda warnings."
The trial court ultimately granted the Defendant's motion to suppress and this appeal followed.
The State asserts two assignments of error:
 I. The trial court erred when it sustained the Defendant's motion to suppress by failing to correctly apply the plain feel doctrine.
 II. The trial court erred when it concluded that the Defendant's statements made during the Terry pat-down were inadmissible under Miranda.
Under its first assignment of error, the State argues Officer Braun had probable cause to search Defendant's jacket pocket for crack-cocaine. The State relies upon the U.S. Supreme Court's decision in Minnesota v. Dickerson that a police officer who discovers contraband which he immediately recognizes through the sense of touch during a protective pat-down search may remove the contraband and seize it, provided probable cause exists to believe the individual being searched possesses contraband.Minnesota v. Dickerson (1993), 508 U.S. 366, *367. The State contends probable cause existed for Officer Braun to believe Defendant possessed drugs based upon the facts that Defendant was seen entering and exiting a known crack house and Defendant only remained in the house for a few minutes, characteristic of a drug deal at the house according to the police officers surveiling the house. Since Officer Braun had probable cause to believe the Defendant had just bought drugs, he could seize the contraband in Defendant's pocket once it became "immediately apparent" to him there was a folded up piece of paper containing crack cocaine in Defendant's pocket during his pat down search of the Defendant.
Under its second assignment of error, the State argues that statements Defendant made to Officer Phillips during the pat-down search were admissible as evidence. Contrary to the trial court's conclusion, Officer Braun's testimony that Defendant was not free to leave during the pat-down search does not automatically trigger Miranda. The State cites State v.Gonzalez for the proposition that a police officer is required to inform an accused of his Miranda rights only when the accused is in custody and under interrogation. State v. Gonzalez (July 10, 1998), Montgomery App. No. 96 CA 124, unreported citing Miranda v.Arizona (1996), 384 U.S. 436. Evidence that the accused was not free to leave, the State contends, is therefore inadequate to support a finding that a police officer has to inform the accused of his Miranda rights. Accordingly, it was not necessary for the police officers to inform the Defendant of his Miranda rights in order for the statements he made during the pat-down search to be admissible as evidence.
The Defendant counters the State's first assignment of error by arguing that Officer Braun's search of Defendant was outside the scope of the justifiable pat-down search for weapons. The Defendant refers to the trial court's conclusion that Officer Braun could not have known there was a folded-up paper containing crack cocaine in Defendant's jacket pocket absent some kind of manipulation of the object by the police officer. The Defendant reasons that Officer Braun then was conducting an illegal search of his outer clothing for contraband rather a pat-down for weapons.
The Defendant responds to the State's second assignment of error by arguing that the Defendant was, in fact, in custody when he was questioned by Officer Phillips about whether he had purchased crack cocaine from the house at 105 Alberta Street. The Defendant cites State v. Gumm (1995), 73 Ohio St.3d 413, 429, for the proposition that police officers have a duty to advise a suspect of his Miranda rights when the questioning rises to the level of custodial interrogation. In determining "whether an individual has been placed into custody, the test is whether, under the totality of the circumstances, a `reasonable person would have believed that he was not free to leave.' " Gumm, supra
at 429 citing United States v. Mendenhall (1980), 446 U.S. 544,554. Defendant contends that, under the totality of the circumstances, it was reasonable to believe he was in custody when he was interrogated by Officer Phillips. Defendant refers to the testimony of Officer Phillips and Officer Braun that he was not free to leave during the pat-down and questioning and to the manner in which Officer Braun restrained him, i.e., grabbing him by the back of the pants and physically escorting him to the police cruiser, in support of his argument that he was in custody. At no time during the custodial interrogation was Defendant informed of his Miranda rights. The Defendant concludes that any statements he made in response to Officer Phillips were therefore inadmissible because of the lack of Miranda warnings.
 I.
The trial court assumes the role of the trier of fact in a hearing on a motion to suppress. State v. Thompson (1995),103 Ohio App.3d 498, 502; State v. Rossiter (1993), 88 Ohio App.3d 162,166. The trial court must determine the credibility of the witnesses and weigh the evidence presented at the hearing.Rossiter, supra at 166.
A reviewing court will not disturb the trial court's findings of fact so long as they are supported by competent, credible evidence. Thompson, supra at 502; Rossiter, supra at 166. Accepting the trial court's findings of fact as true, an appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard. Thompson, supra at 502; Rossiter,supra at 166.
In Terry v. Ohio, (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889, the Supreme Court held that when a police officer reasonably believes a suspect is armed and dangerous, the officer may conduct a pat-down search "to determine whether the person is in fact carrying a weapon." 392 U.S. at 24. If, during a Terry
pat-down search of a suspect's outer clothing, a police officer feels an object whose contour or mass makes its identity as illegal contraband immediately apparent, the police officer can then lawfully seize the incriminating object.Minnesota v. Dickerson (1993), 508 U.S. 366, 367.
In the present case, the trial court did not believe Officer Braun's testimony that, during his pat-down search of Defendant's outer clothing, he felt what was immediately apparent to him to be a folded up piece of paper containing crack-cocaine. Although the trial court found Officer Braun was justified in conducting a pat-down search of Defendant for weapons, it concluded he could not have immediately known the object he felt in Defendant's jacket pocket was crack cocaine. At the time of the pat-down search, Defendant possessed less than one gram of crack cocaine. According to the trial court, "[t]his would amount to the size of one small piece of candy." Because of its size and location in the Defendant's jacket pocket, the trial court determined "there would have been no reason to speculate that the object was contraband" unless Officer Braun manipulated the object in some way.
The trial court simply did not believe Officer Braun's testimony. We will not disturb the trial court's determination of a witness's credibility in a motion to suppress hearing. The State's first assignment is sustained, however, because of our resolution of the State's second assignment of error.
 II.
A suspect subjected to a custodial police interrogation must be warned of his constitutional rights in the absence of a clear, intelligent waiver of those rights. Miranda v. Arizona (1966),384 U.S. 436, 444. The Supreme Court has said custodial interrogation involves "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. " Id. A suspect is in custody for Miranda purposes when "there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler (1983),463 U.S. 1121, 1125 quoting Oregon v. Mathiason (1977),429 U.S. 492, 495. The test in determining whether there has been such a restraint is how a reasonable man in the suspect's situation would have understood his situation. Berkemer v. McCarty (1984),468 U.S. 420, 442.
In the present case, the trial court determined that the Defendant was "in custody" for Miranda purposes when he was subjected to the pat-down search and questioned about whether he had bought drugs. The trial court based its decision on Officer Braun's testimony that the Defendant was not free to leave during the pat-down search and questioning. The trial court erred in relying solely upon the testimony of Officer Braun in coming to its conclusion that the Defendant was in custody for Miranda
purposes. The subjective intent of the police officer "has no bearing on the question of whether the suspect is `in custody' at a particular time." See Berkemer, supra at 442; See also State v.Uhler (1992), 80 Ohio App.3d 113, 117. The proper legal standard for determining whether a suspect is "in custody" for Miranda
purposes is whether a reasonable man in the suspect's position would have believed he was the subject of a custodial interrogation. Berkemer, supra at 442.
Based on the circumstances, we cannot find, as a matter of law, a reasonable person in the Defendant's position would have believed he was the subject of a custodial interrogation. The nature of the interaction in this case between the police officers and the Defendant was more like an investigative Terry stop than an arrest. See State v. Gaston (1996), 110 Ohio App.3d 835, 842. In Terry, the Supreme Court held that police officers may conduct reasonable searches of individuals who are not in custody to ensure that they are not armed prior to conducting investigatory questioning. 392 U.S. at 23. The investigative-stop exception to the Fourth Amendment warrant requirement allows the police to detain an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has or is about to occur. Terry, supra at 21. "[P]ersons temporarily detained pursuant" to Terry stops "are not `in custody' for the purposes of Miranda." Berkemer, supra at 440.
 While it is not necessary that the accused be arrested in order for a court to conclude that the accused was in custody, most courts have concluded that Miranda is inapplicable to temporary field detentions. Cook, Constitutional Rights of the Accused (3d Ed.) , and the cases cited there at § 6:30. For example, in State v. Gaston, supra, the Lake County Court of Appeals held that the police officer who was conducting an investigative stop of a drug suspect on a public sidewalk, and who frisked the suspect for his protection, was not required to give Miranda warnings before asking the defendant whether he possessed drugs.
We conclude the Defendant was not "in custody" for Miranda
purposes during the stop and pat-down frisk. Therefore, any statements Defendant made during the stop and resultant pat-down are admissible. Accordingly, the State's second assignment of error is sustained. The State's first assignment of error is Sustained because the seizure of the crack cocaine by Officer Braun was justified by the probable cause provided by the defendant's admissions that he had just purchased drugs. The judgment of the trial court is Reversed and Remanded for further proceedings consistent with this opinion.
 _________________________ BROGAN, J.
WOLFF, J., concurs.