JOURNAL ENTRY and OPINION
{¶ 1} The court denied defendant Terrance Deadwiley's motion to suppress evidence of cocaine found in a search of his car. The sole assignment of error contests that ruling.
 {¶ 2} The court made oral findings of fact, which we accept with deference since we recognize that the court is in the superior position to resolve questions of fact and evaluate witness credibility. State v.Smith (1997), 80 Ohio St.3d 89; State v. Mills (1992), 62 Ohio St.3d 357. Along with these oral findings, the court stated its intention to file an order along with its half-sheet entry denying the motion to suppress. The file does contain a draft opinion by the court, but that opinion is neither signed by the court nor journalized, so we cannot draw any conclusions from what is contained in that draft opinion.
 {¶ 3} The Cleveland Police Department received several complaints that two young males had committed robberies in the Tremont area. Two of the complaints stated that a firearm had been used during the commission of the robberies. The police set up plain clothes surveillance near Lincoln Park at about 12:30 a.m. They spotted a female sitting on a swing and thought she might be a likely victim for a robber. Deadwiley drove up near the officers, exited his vehicle and walked to the swings. He sat down on the swing next to the female and began talking with her. By coincidence, a police helicopter responding to an unrelated matter flew by and illuminated the park. Deadwiley took off running for his car; the female remained on the swing. A detective watched Deadwiley fumble about in his glove box. Once the helicopter passed, Deadwiley exited the car and returned to the swings where he spoke to the female for another five minutes.
 {¶ 4} The police thought Deadwiley's actions were suspicious, so they approached him and asked him for identification. He claimed to have no driver's license, and further denied that the car he had been seen entering and exiting belonged to him. Because of his evasiveness in answering their questions, the officers handcuffed him and then patted him down. The pat-down did not yield any weapons. An officer then reached into Deadwiley's pocket and found a driver's license, cell phone and $500 in cash. The officers asked Deadwiley if they could search his car. He told them, "go ahead, I have nothing to hide." A search of the glove compartment yielded a bag of cocaine.
 {¶ 5} During the suppression hearing, a detective testified that Deadwiley had been "uncooperative." Denying that Deadwiley had been arrested, the detective said that Deadwiley had been handcuffed because the police intended to investigate whether he had any outstanding warrants and they could not safely place him in their unmarked vehicle because it did not have a partition.
 {¶ 6} The court made the following oral findings. First, it found that the police had no reason to handcuff Deadwiley. They had been speaking with him for a minute or so without concern for their safety, and nothing in his answers to the police or in his conversation with the female gave them reason to believe that Deadwiley had been armed. Second, the court found insufficient evidence to establish that Deadwiley gave the police permission to search his car.
 {¶ 7} Nevertheless, the court denied the motion to suppress. We find the court erred by denying the motion to suppress because its factual findings cannot support its legal conclusion to deny the motion to suppress.
 {¶ 8} Under Terry v. Ohio (1968), 392 U.S. 1, 30, a police officer may briefly stop and detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that "criminal activity may be afoot," even if the officer lacks probable cause to make an arrest. We find that the police articulated sufficient justification for stopping Deadwiley given the reports of robberies in the area, Deadwiley's physical similarities to the suspects, the late hour and his suspicious flight to the car after seeing the police helicopter hover overhead.
 {¶ 9} The correctness of the stop, however, does not translate to the pat-down. As part of the brief detention permitted under Terry, the police may conduct a protective pat-down for weapons. In State v. Adams
(1993), 67 Ohio St.3d 405, 414, the Ohio Supreme Court stated:
 {¶ 10} "Under Terry and its progeny, the police may search only for weapons when conducting a pat down of the suspect. The protective pat down under Terry is limited in scope to this protective purpose and cannot be employed by the searching officer to search for evidence of crime. Obviously, once the officer determines from his sense of touch that an object is not a weapon, the pat-down frisk must stop. The officer, having satisfied himself or herself that the suspect has no weapon, is not justified in employing Terry as a pretext for a search for contraband." (Citations omitted.)
 {¶ 11} In order to justify a pat-down, the officer must point to objectively reasonable grounds to suspect the individual is armed and dangerous. State v. Andrews (1991), 57 Ohio St.3d 86, 89. The court found as a matter of fact that "there, frankly, was no reason at that particular point to think that the defendant was armed." If the police had no reason to believe that Deadwiley carried any weapons (a conclusion that is amply supported by the testimony), by the court's own factual conclusion, they had no reason to pat him down.
 {¶ 12} Moreover, the police did not pat-down Deadwiley untilafter they had handcuffed him. Once handcuffed, Deadwiley posed no reasonable threat to use any weapon that he might have possessed. We recognize that the police may validly handcuff a suspect without effectuating an arrest if the handcuffing is intended for their safety. See, e.g., United States v. Sanders (C.A.5, 1993), 994 F.2d 200, 206. However, the circumstances here gave the police no reason to believe that Deadwiley posed any threat of harm to them. The police were able to speak with Deadwiley and his female companion long enough to learn that she and Deadwiley had been engaged in a "lover's quarrel" and that she needed a ride home. Obviously, the police did not manifest any immediate concern that Deadwiley posed a threat to them. In fact, the detective testified that Deadwiley was handcuffed because the undercover car did not have a screen separating the driver from the back seat. When asked why the police did not release Deadwiley from the handcuffs after the pat-down failed to yield any weapons, the detective denied that Deadwiley had been under arrest and stated, "* * * he was in the process of maybe being issued a citation or whatever * * *."
 {¶ 13} But even if the pat-down was valid, it would not give the police the right to reach into Deadwiley's pocket and retrieve his keys and driver's license. The pat-down is limited solely to looking for weapons. Once the police satisfied themselves that Deadwiley was unarmed, they had to stop. They had no justification for reaching into his pocket, because that act went beyond the scope of what is permitted in a pat-down. State v. Thompson (1995), 103 Ohio App.3d 498, 503-504.
 {¶ 14} The only way in which the police could conceivably justify the search of Deadwiley's car would be under theories that he consented to the search or that the search constituted a search incident to an arrest. The court's factual conclusions foreclosed any reliance on consent to search the car, however, as the court found as a matter of fact that Deadwiley did not give the police permission to enter his vehicle. That conclusion was supported by competent, credible evidence.
 {¶ 15} This leaves a search incident to an arrest as the only basis for affirming the court's ruling on the motion to suppress. When the police make an arrest, two exceptions to the general rule requiring warrants for searches apply to permit the police to make an immediate search: "(1) the need to disarm the suspect in order to take him into custody and (2) the need to preserve evidence for later use at trial."Knowles v. Iowa (1998), 525 U.S. 113, 116 (citations omitted). The predicate for such a search, of course, is the validity of the arrest and whether it was supported by probable cause. State v. Barker (1978),53 Ohio St.2d 135, 139.
 {¶ 16} The court found as a matter of fact that Deadwiley was under arrest at the point where the police placed him in handcuffs. We have no reason to dispute this finding, as it is generally stated that a person is under arrest when a reasonable person would believe that his liberty had been restrained. United States v. Mendenhall (1980),446 U.S. 544, 554. The evidence shows that Deadwiley had been handcuffed with the intent to place him in the police car. His liberty had been restrained to the point where it could only be concluded that he had been arrested.
 {¶ 17} Nothing in the evidence, however, suggests that the police had the necessary probable cause to make an arrest. "Probable cause for an arrest exists when officers have `facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information' that would sufficiently `warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" State v. Fanin, Cuyahoga App. No. 79991, 2002-Ohio-6312, at ¶ 12, quoting Beck v.Ohio (1964), 379 U.S. 89, 91.
 {¶ 18} The police did not have probable cause to arrest Deadwiley at the time they placed him in handcuffs. Obviously, the detective's testimony that he did not intend to arrest Deadwiley speaks volumes about the police intent at the time. In fact, the detective effectively showed how little probable cause existed by his statement that he placed Deadwiley in the police vehicle to "maybe" issue him a citation. This is not the type of cause that is required to make an arrest, much less a search incident to arrest.
 {¶ 19} The police thought that Deadwiley gave "evasive" answers to their questions about the car they saw him enter as the police helicopter flew overhead. A person is not obligated to respond to an officer's questions. In Berkemer v. McCarthy (1984), 468 U.S. 420, 439-440, the United States Supreme Court made the following observations about Terry:
 {¶ 20} "The stop and inquiry must be reasonably related in scope to the justification for their initiation. Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obligated to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, * * * he must then be released." (Footnotes and quotation marks omitted.)
 {¶ 21} Deadwiley's evasiveness about the car did not give the police reason to believe that he had committed a crime. Admittedly, the detective saw Deadwiley act in a suspicious manner when the helicopter flew by, but there was no testimony pointing to specific facts to show that any crime had been committed. The detective could only say that he saw Deadwiley fumbling about in the glove compartment of the car. He saw no illegal activity of any kind and his failure to so articulate any such facts meant that there was no probable cause to arrest.
 {¶ 22} In summary, the police were justified in conducting aTerry stop, but they lacked an objectively reasonable basis to believe that Deadwiley possessed weapons of any kind. Moreover, the police had no legal basis for reaching into Deadwiley's pocket after their pat-down failed to uncover any weapons. Finally, having made no valid arrest and lacking proper consent, they could not search the vehicle. It follows that any evidence seized during the encounter must be suppressed as the fruits of an illegal search. Wong Sun v. United States (1963),371 U.S. 471, 488. The assigned error is sustained.
Reversed and remanded.
This cause is reversed and remanded for proceedings consistent with this opinion.
It is, therefore, ordered that said appellant recover of said appellee his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, A.J., and COLLEEN CONWAY COONEY, J., CONCUR.