OPINION
{¶ 1} On March 27, 2000, Defendant entered no contest pleas to multiple felony offenses: possessing more than one but less than five grams of crack cocaine, R.C. 2925.11(A); possessing more than ten but less than twenty-five grams of crack cocaine, R.C. 2925.11(A); carrying concealed weapons, R.C. 2923.12(A), and, having weapons while under a disability, R.C. 2923.13(A)(3). Defendant was found guilty and was sentenced by the trial court to concurrent prison terms totaling three years. Defendant's no contest pleas followed the trial court's decision overruling Defendant's motion to suppress the evidence. That decision forms the basis of Defendant's appeal from his conviction and sentence.
 {¶ 2} The facts as found by the trial court and based upon the evidence adduced at the suppression hearing are as follows:
 {¶ 3} "On September 28, 2001, at approximately 6:30 p.m., Detectives Phillips and House, both members of the Dayton Police Department's Street Crimes Bureau, were performing surveillance on three businesses, a BP Service Station, an Econo Lodge Motel, and McDonalds, all located in the 2100 block of Edwin C. Moses Boulevard. These locations were under surveillance because drug transactions and other drug related activities are known to occur in and around the three indicated businesses. Detectives Phillips and House were conducting the surveillance from a parking lot across the street from the three businesses.
 {¶ 4} "Detectives Phillips and House observed a red Cavalier automobile containing four individuals pull into the McDonalds parking lot. The red Cavalier did not get into the drive-through line nor did any person in the vehicle go inside to make a purchase. Instead, the driver of the red Cavalier parked the vehicle in the McDonalds lot so that the vehicle's occupants could observe Edwin C. Moses Boulevard.
 {¶ 5} "The red Cavalier was so positioned for approximately ten minutes at which time the vehicle traveled into the access lane on Edwin C. Moses, and then circled back into the McDonalds parking lot. The Cavalier immediately traveled back into the access lane, and a backseat passenger exited the vehicle, faced East, and waved his arms. The Cavalier then traveled back into the McDonalds parking lot.
 {¶ 6} "The Cavalier, at this point, parked behind a green Jeep. Both vehicles exited McDonalds and traveled West on Edwin C. Moses. Detectives Phillips and House, since the activity witnessed was consistent with an impending drug transaction, radioed nearby uniformed members of the Street Crimes Bureau of this activity and requested that the vehicles be followed. The vehicles traveled onto Alwildy Drive, and while on Alwildy Drive the vehicles came to a stop. The same backseat passenger that had previously exited the Cavalier once again exited the vehicle and approached the green Jeep. Uniformed members of the Street Crimes Bureau approached the two vehicles and made an investigatory stop.
 {¶ 7} "Officer Braun approached the Jeep which, it turned out, was being driven by the Defendant, Shem Heard. Officer Braun testified that as he approached Mr. Heard he observed that Mr. Heard was bent to his right and it appeared that Mr. Heard was reaching with his right hand into the vehicle's floorboard area.
 {¶ 8} "Officer Braun ordered Mr. Heard to exit the vehicle. Officer Braun, upon Mr. Heard's removal from the vehicle, conducted a pat down search of Mr. Heard's outer clothing. Officer Braun testified that as he was conducting the pat down search he felt a baggie containing what he, without manipulation, immediately knew to be crack cocaine. The baggie was in Mr. Heard's right front pants pocket. Officer Braun further testified that his immediate recognition of crack cocaine was based upon his fourteen year police career which has caused him to have frequent contact with crack cocaine and the ability to recognize crack cocaine by the hard, irregular shape of crack cocaine "rocks." Officer Braun removed the baggie from Mr. Heard's right front pocket and the baggie did contain crack cocaine.
 {¶ 9} "Officer Braun further testified that after he discovered the crack cocaine in Defendant's possession that he verbally informed Mr. Heard of his Miranda rights, that Mr. Heard verbally waived his rights, and Mr. Heard made a statement to Officer Braun. Officer Braun finally testified that after he arrested Mr. Heard he ran Mr. Heard's identifying information through the cruiser's KDT system, and this revealed that Mr. Heard had an outstanding felony warrant. Officer Braun indicated that as part of every investigatory stop he runs each suspect's identifiers through the KDT system.
 {¶ 10} "Detective Phillips reenters the picture at this point. Officer Braun informed Detective Phillips about Mr. Heard's movement within the vehicle that he observed when approaching Mr. Heard's vehicle and the discovery of crack cocaine upon Mr. Heard. Detective Phillips testified that he conducted a search of the Jeep's front seat area. Detective Phillips testified that during this search he, near the edge of the vehicle's console, observed a baggie containing what appeared to be crack cocaine. The baggie was retrieved and it did contain crack cocaine. Detective Phillips also discovered a handgun during the search of the Jeep's front seat area. Detective Phillips testified that the search of the Jeep was a search incident to an arrest and also an inventory search."
 FIRST ASSIGNMENT OF ERROR {¶ 11} "The trial court erred when it held that the investigatory stop was constitutionally permissible."
 {¶ 12} The trial court's findings of fact are supported by competent, credible evidence in the record. Thus, we will not disturb those findings. State v. Thompson (1995), 103 Ohio App.3d 498, 502. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether those facts meet the appropriate legal standard. Id.
 {¶ 13} Defendant argues that because the police observed no illegal activity prior to stopping his vehicle, there was no reasonable, articulable suspicion to support an investigatory stop. We disagree. While a series of events may appear innocent when viewed separately, taken together, they can warrant further investigation. United States v.Sokolow (1989), 490 U.S. 1, 9-10.
 {¶ 14} In order to conduct an investigatory stop, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. Terry v. Ohio (1968), 392 U.S. 1, 21; State v. White (January 18, 2002), Montgomery App. No. 18731. The propriety of an investigative stop must be viewed in light of the totality of the surrounding facts and circumstances. State v. Bobo (1988), 37 Ohio St.3d 177. These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. Statev. Andrews (1991), 57 Ohio St.3d 86. Accordingly, the court must take into consideration the officer's training and experience and understand how the situation would be viewed by the officer on the street. Id.
 {¶ 15} The trial court found that the 2100 block of Edwin C. Moses Boulevard is an area known for heavy drug activity. Det. Phillips testified that he has spent five years in the police drug unit and has made over one hundred drug arrests in this area in the past two and one-half years. Officer Braun testified that he has been in the drug unit for three and one-half years and has made fifty to sixty drug arrests in this same area. Both officers said they are familiar with how drug transactions occur in this area.
 {¶ 16} Det. Phillips testified about the activity he witnessed in this case; the red Cavalier entered the McDonalds' parking lot and parked without any of the occupants making a purchase; after a short time the Cavalier circled the restaurant and then reentered the parking lot at which time one of its occupants exited the vehicle and waved his arms trying to get someone's attention; the Cavalier then circled the restaurant again and this time pulled in behind a green Jeep, whereupon both vehicles drove away together to a different location where the occupants got together. This same activity Det. Phillips said he witnessed hundreds of times in the past when drugs were bought and sold. This same activity in this same area has in the past led to at least fifty drug arrests by Det. Phillips.
 {¶ 17} It is clear that based upon his experience in this area, Det. Phillips could recognize a series of events that would likely constitute a drug transaction. White, supra. When the events as they unfolded in this case are viewed through the eyes of Det. Phillips, with his experience, it is obvious that those facts and circumstances constituted sufficient reasonable suspicion of drug activity to justify an investigative stop. White, supra.
 {¶ 18} It is of no significance that Officer Braun, not Det. Phillips, made the actual stop of Defendant's vehicle. Det. Phillips relayed to Off. Braun over his police radio the activity he saw at the McDonalds as it happened. An officer need not have knowledge of all of the facts necessary to justify an investigatory stop, as long as the law enforcement body as a whole possesses such facts and the detaining officer reasonably relies upon those who possess the facts. State v.Cook (1992), 65 Ohio St.3d 516, 521. A police radio broadcast may provide the necessary stimulus for an investigatory stop, even where the officer making the stop lacks all of the information justifying the stop. Id.
 {¶ 19} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 20} "The court erred when it approved the `pat down' of defendant."
 {¶ 21} Defendant argues that the pat down or frisk of his person for weapons by Off. Braun was not warranted.
 {¶ 22} During an investigative stop, a police officer may conduct a pat down of the suspect's outer clothing for weapons if the officer has a reasonable suspicion that the suspect might be armed and dangerous.Terry v. Ohio, supra. The Ohio Supreme Court has expanded this doctrine by holding that "the right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." State v. Evans, 67 Ohio St.3d 405,413, 1993-Ohio-186; White, supra.
 {¶ 23} The police in this case stopped Defendant's vehicle based upon a reasonable suspicion that the occupants were engaging in a drug transaction. That fact alone would justify the pat down of Defendant.Evans, supra; White, supra. However, as Off. Braun approached Defendant's vehicle, Defendant bent over and put his hands underneath the dash near the floorboard area around the center console, which Off. Braun said caused him to fear for his safety. Defendant's movements provided even more justification for Off. Braun to pat down Defendant for weapons.White, supra. The frisk of Defendant for weapons was constitutionally permissible under the existing facts and circumstances.
 {¶ 24} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 25} "The court erred when it applied the `plain feel' doctrine to the `pat down' of defendant."
 {¶ 26} Defendant argues that the testimony by Off. Braun that when he patted down Defendant for weapons he felt in Defendant's pants pocket what he immediately recognized through his experience and sense of touch as crack cocaine, should not be believed because only through manipulation could the nature of such an object be determined.
 {¶ 27} A police officer conducting a pat down frisk for weapons who feels an object whose contour or mass makes its identity as illegal contraband immediately apparent, without manipulating that object, may seize the object pursuant to the "plain feel" exception to the warrant requirement. Minnesota v. Dickerson (1993), 508 U.S. 366; State v.Lander (January 21, 2000), Montgomery App. No. 17898. The officer must have probable cause to believe that the item is contraband before seizing it. Lander, supra.
 {¶ 28} Off. Braun testified as follows:
 {¶ 29} "A. In his right front pants pocket, which he was wearing tan, uh . . . dress pants. Uh . . . I felt what was immediately apparent to me to be a baggie containing suspect crack cocaine.
 {¶ 30} "Q. Why was it immediately apparent to you?
 {¶ 31} "A. The consistency of it, the — you could feel the baggie and the irregular-shaped, uh . . . crack rocks inside is something I've felt, uh . . . thousands of times.
 {¶ 32} And I've been a cop for fourteen years. And it's something I've felt over and over, and it was just immediately apparent to me that that's what, in fact, it was going to be.
 {¶ 33} "Q. And, uh . . . excuse me. And when you felt this, uh . . . object, what did you do?
 {¶ 34} "A. Removed it from his right front pants pocket . . . (Supp. Tr. 62)."
 {¶ 35} This testimony is sufficient to demonstrate that Off. Braun had probable cause to believe that the item he felt in Defendant's pants pocket was contraband before he removed that item because its incriminating character was immediately apparent to Off. Braun. Lander,supra. As for Braun's credibility, the trial court chose to believe Braun's testimony, and this court will not disturb the trial court's determination of a witness' credibility in a motion to suppress hearing.State v. Healy (Aug 4, 2000), Montgomery App. No. 18232. The seizure of the crack cocaine from Defendant's pants pocket did not violate his Fourth Amendment rights.
 {¶ 36} The third assignment of error is overruled. The judgment of the trial court will be affirmed.
 {¶ 37} FAIN, P.J. and WOLFF, J., concur.