[Cite as *State v. Swopes*, 2011-Ohio-2072.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24044 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 09-CR-3310 |
| v. | : | |
| | : | (Criminal Appeal from |
| WILLIAM A. SWOPES | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of April, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

KENT J. DEPOORTER, Atty. Reg. #0058487, 7501 Paragon Road, Lower Level, Dayton, Ohio 45459
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} William Swopes appeals his conviction on two counts of felonious assault, arguing that the trial court erred by overruling his motion to suppress and arguing that his conviction is against the manifest weight of the evidence. We will affirm.

# I

{¶ 2} Sometime between 1 a.m. and 2 a.m. on October 6, 2009, Swopes was in Glenn Williams's room at the Good-Nite Inn. They had met previously, and Swopes had been to Williams's room eight or nine times since then. During a struggle between the two men, Swopes hit Williams over the head several times with a glass bottle, which shattered and cut Williams.

{¶ 3} On October 29, 2009, Swopes was indicted on one count of felonious assault (serious physical harm), R.C. 2903.11(A)(1); one count of felonious assault (deadly weapon), R.C. 2903.11(A)(2); one count of aggravated robbery (deadly weapon), R.C. 2911.01(A)(1); and one count of aggravated robbery (serious physical harm), R.C. 2911.01(A)(3). Swopes filed a motion to suppress statements that he made during a police interview. After a hearing, on December 15, 2009, the trial court overruled the motion.

{¶ 4} In late April 2010, the case went to jury trial. At trial, Swopes admitted that he hit Williams with the bottles, but he said that he did so to protect himself when Williams came at him with a knife. According to Swopes, Williams wanted drugs from him. When he refused to give him any and reached for the motel room door, Williams stabbed him with the knife. Swopes backed away, and Williams stood in front of the motel room door, threatening him with the knife. When Williams came after him, swinging the knife, Swopes hit him with a bottle. Williams also testified at the trial. He said that Swopes pulled a bottle of whiskey out of the refrigerator and hit him over the head. Williams said that Swopes then began searching the room, demanding money. When Swopes found Williams's wallet, Swopes left.

{¶ 5} Detective Matt Gallagher picked Swopes up at the latter's home and, shortly

after 6:00 a.m., began an interview with Swopes at the police station. Detective Gallagher testified at trial about what Swopes told him during the interview. Swopes admitted to being in the room when Williams was assaulted: "'Okay. I was there. And I was in the room with Black, myself and the victim. And there was an argument over crack cocaine.'" (Tr. 675).

**{¶ 6}** "Q    Did he tell you who was arguing?

**{¶ 7}** "A    It was an argument with Black, Glenn Williams and himself. They were all arguing over the crack cocaine.

**{¶ 8}** "Q    And then did he tell you what happened after this argument?

**{¶ 9}** "A    Well, right after he got done saying that, that's when I noticed the cut on his right hand. That's when I kind of, you know, asked him about that. 'Tell me about the cut on your hand.'

**{¶ 10}** "Q    Did you ask him if that cut was from this incident at the Good-Nite Inn?

**{¶ 11}** "A    I asked what happened to his hand.

**{¶ 12}** "Q    All right. What did he say?

**{¶ 13}** "A    He said his dog had bit him."

**{¶ 14}** (Tr. 675-676). Detective Gallagher then testified that, based on his experience, dog bites leave a puncture wound, but Swopes's wound, which Gallagher photographed, looked like a laceration. The prosecuting attorney asked Gallagher:

**{¶ 15}** "Q    Did the Defendant ever change that story to you about his injury?

**{¶ 16}** "A    No, he did not.

**{¶ 17}** "Q    Did he ever tell you that Glenn Williams did that?

**{¶ 18}** "A    No.

{¶ 19} "Q      During your interview, did he ever tell you that Glenn Williams had a knife?

{¶ 20} "A      Never came up.

{¶ 21} "Q      Did he ever tell you that Glenn Williams cut him with a knife?

{¶ 22} "A      Never told me that."

{¶ 23} (Tr. 677). Detective Gallagher also testified that Swopes never told him that Glenn Williams had threatened him.

{¶ 24} At the end of the interview, Swopes took the opportunity that Gallagher gave him to write down his version of the events that night. Alone in the interview room, Swopes wrote, "'I hit he. But I did not do anything else. William John. Take his money and only give me a hit of crack. I only hit him two time because he–was come at me. That's why had him two time.'" (Tr. 681).

{¶ 25} A jury acquitted Swopes on the aggravated robbery counts but found him guilty on both counts of felonious assault. The trial court sentenced Swopes to 3 years in prison.

{¶ 26} Swopes appealed.

## II

{¶ 27} In the first assignment of error, Swopes argues that the trial court erred by overruling his motion to suppress the statements that he made to police during an interview. He argues in the second assignment of error that his conviction is against the manifest weight of the evidence. We will consider the second assignment first.

**Second Assignment of Error**

{¶ 28} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS STATEMENTS BECAUSE THE APPELLANT'S WAIVER OF HIS RIGHTS WAS NOT MADE VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY."

{¶ 29} Swopes argues that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. Swopes contends that he did not sufficiently comprehend what he was doing when he waived these rights because he had difficulty reading, had earlier used drugs and alcohol, and had not slept that night.

{¶ 30} The law we applied in *State v. Phillips* (Aug. 11, 2000), Montgomery App. No. 18049, also applies here, and its explication bears quoting at length:

{¶ 31} "The trial court assumes the role of the trier of fact in a hearing on a motion to suppress. *State v. Thompson* (1995), 103 Ohio App.3d 498, 502, 659 N.E.2d 1297; *State v. Rossiter* (1993), 88 Ohio App.3d 162, 166, 623 N.E.2d 645. The trial court must determine the credibility of the witnesses and weigh the evidence presented at the hearing. *Rossiter*, supra at 166, 623 N.E.2d 645. A reviewing court will not disturb the trial court's findings of fact so long as they are supported by competent, credible evidence. *Thompson*, supra at 502, 659 N.E.2d 1297; *Rossiter*, supra at 166, 623 N.E.2d 645. Accepting the trial court's findings of fact as true, an appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard. *Thompson*, supra at 502, 659 N.E.2d 1297; *Rossiter*, supra at 166, 623 N.E.2d 645.

{¶ 32} "* * * The burden is on the prosecution to prove by a preponderance of evidence that a defendant waived his *Miranda* rights voluntarily, knowingly, and intelligently.

*Colorado v. Connelly* (1986), 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 485. * * *

{¶ 33} "* * * The test is whether the [waiver] [is] voluntary under the totality of the circumstances, 'including the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.' *State v. Smith* (1991), 61 Ohio St.3d 284, 288, 574 N.E.2d 510 quoting *State v. Barker* (1978), 53 Ohio St.2d 135, 372 N.E.2d 1324, paragraph two of the syllabus; [*State v. Clark* (1988), 38 Ohio St.3d 252], 261, 527 N.E.2d 844.

{¶ 34} "The totality of the circumstances analysis is triggered by evidence of police coercion. *Clark*, supra at 261, 527 N.E.2d 844. '[C]oercive police activity is a necessary predicate to the finding' that a suspect involuntarily waived his *Miranda* rights and involuntarily confessed. *Connelly*, 479 U.S. at 167, 107 S.Ct. at 522, 93 L.Ed.2d at 484. A suspect's decision to waive his Miranda rights * * * [is] made voluntarily absent evidence that 'his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct.' *Colorado v. Spring* (1987), 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954, 966; [*State v. Moore* (1998), 81 Ohio St.3d 22,] 32, 689 N.E.2d 1; *State v. Dailey* (1990), 53 Ohio St.3d 88, 91, 559 N.E.2d 459.

{¶ 35} "The suspect's impaired mental condition at the time of the waiver and the confession has some bearing on the issue of the voluntariness but only as to whether police officers deliberately exploit the suspect's mental condition to coerce the waiver and confession. *Connelly*, 479 U.S. at 164, 93 L.Ed.3d at 486; *State v. Nobles* (1995) 106 Ohio

App.3d 246, 279, 665 N.E.2d 1137. In *Nobles*, the defendant had taken the prescription narcotic Xanax nearly twelve hours before admitting to police she had drowned her son and claimed she was still under the influence of the drug when she confessed. Id. at 278, 665 N.E.2d 1137. We held, as a matter of law, that her confession was voluntary when there was no evidence to show the police officers deliberately took advantage of her alleged impaired state to coerce her into confessing. Id. at 278, 665 N.E.2d 1137.

{¶ 36} "In the present case, like *Nobles*, there is nothing in the record to support the conclusion that the police officers deliberately exploited Appellant's alleged impaired state to coerce him into waiving his *Miranda* rights * * *. Appellant was clearly in an impaired state when the Dayton police officers arrested him [] at three in the morning. However, there is no evidence to indicate he was still impaired during the 10:30 a.m. interview with [the detective], when he waived his Miranda rights * * *. Assuming *arguendo*, Appellant was still under the influence of drugs and alcohol at the time of the interview, there is no evidence to show that [the detective] took advantage of Appellant's impaired mental state to coerce him into waiving his *Miranda* rights and making a self-incriminating statement."

{¶ 37} While we did not find evidence in *Phillips* that showed the detective exploited the appellant's alleged impaired state to coerce him into waiving his *Miranda* rights, we did find "evidence to support the conclusion that Appellant voluntarily waived his *Miranda* rights." *Phillips*. "Appellant signed the waiver form," we said, "which is strong proof that the waiver was valid." *Phillips*, citing *North Carolina v. Butler* (1979), 441 U.S. 369, 274-275, 99 S.Ct. 1755, 60 L.Ed.2d 286; and *Moore*, at 32.

{¶ 38} Here the situation is the same. The incident between Swopes and Glenn

Williams occurred between 1 a.m. and 2 a.m. The trial court found that there was no evidence that Swopes was impaired during his 6:00 a.m. interview with Detective Gallagher. Swopes did not smell of alcohol; he did not slur his speech; he appeared to understand the rights as they were read. In sum, Swopes acted normally, he did not appear to be under the influence of alcohol or drugs. The trial court further found a lack of specificity regarding the times and quantity of alcohol and drug use. The evidence did not reveal when Swopes was drinking or how much he drank. Nor did the evidence reveal when Swopes ingested crack cocaine or how much he ingested. Moreover, assuming that Swopes was still under the influence of alcohol and drugs at the time of the interview, there is no evidence to show that Detective Gallagher took advantage of his impaired state to coerce him into waiving his *Miranda* rights. The trial court expressly found no evidence of coercion by Detective Gallagher. He made no threats or promises to Swopes. The court found no evidence of mistreatment, specifically, no evidence of physical deprivation–Swopes was given water and did not ask for food or anything else.

{¶ 39} There is however evidence that Swopes voluntarily waived his *Miranda* rights. The court found that Detective Gallagher advised Swopes of each of his constitutional rights, including the right against self incrimination and the right to counsel, by reading to Swopes a pre-interview waiver form. Swopes acknowledged that he understood each right by initialing the form beside it. Swopes then signed the waiver form. It was only after he had signed the form that Swopes made his statements.

{¶ 40} We conclude here, as we did in *Nobles* and *Phillips*, that the state sustained its burden to prove that the defendant voluntarily waived his *Miranda* rights.

{¶ 41} The second assignment of error is overruled.

**First Assignment of Error**

{¶ 42} "THE JURY'S VERDICT IN FINDING THE APPELLANT GUILTY ON BOTH COUNTS OF FELONIOUS ASSAULT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, BECAUSE THE APPELLANT WAS ACTING IN SELF DEFENSE."

{¶ 43} The manifest-weight test is this: "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, at ¶44, quoting *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting *Thompkins*, at 387.

{¶ 44} Swopes argues that the weight of evidence supports his claim that he acted in self defense. We disagree. Rather, Swopes's verbal and written statements made during his interview with Detective Gallagher (quoted above) weigh heavily *in favor* of the jury's verdicts. We cannot say that the jury clearly lost its way in believing Detective Gallagher's testimony over Swopes's. There is no reason that the jury should have disregarded Gallagher's testimony. The weight of the evidence does not lie heavily against conviction.

{¶ 45} The first assignment of error is overruled.

{¶ 46} The judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FAIN and BROGAN, JJ., concur.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Mathias H. Heck, Jr.
R. Lynn Nothstine
Kent J. Depoorter
Hon. Timothy N. O'Connell