JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from a conviction entered by Judge Mary J. Boyle after a jury found Brandon Whitt guilty of rape[1] and kidnapping.[2] Whitt claims the judge erred in denying his motion to suppress his statements to police, that the prosecutor improperly relied on excluded expert testimony in closing argument, and that his convictions were not supported by the evidence. We affirm the verdicts, but vacate the sentences and remand for resentencing.
 {¶ 2} On the morning of May 16, 2002, then twenty-six year old Whitt called an escort service advertised in a local weekly newspaper and asked for a woman to come to entertain at a bachelor party at an address on Scottsdale Boulevard in Shaker Heights. D.L., the owner and sole employee of the service, agreed and was dropped off at the address by car that same morning. She stated that Whitt invited her into the house and used a key to lock the door behind her, which prevented her from leaving. He then led her by the arm downstairs to the basement where, she claimed, he told her to take off her dress and, when she refused, he took her dress off and forcibly removed her underwear. After that point, D.L. stated that she followed Whitt's orders, submitted and was raped.
 {¶ 3} After he completed the act, he went upstairs, called the escort service and requested someone pick up D.L., after which he unlocked the door and allowed her to leave. D.L.'s mother, who had driven her to Whitt's house, answered the phone and drove to pick up her daughter, who she found walking down Scottsdale Boulevard toward Warrensville Road. D.L. told her mother that she had been raped, and used her mother's cell phone to call the police. D.L.'s mother drove into Whitt's driveway and honked the horn and knocked on his door until he came out, shouted at him, and, apparently, even struck him with her car.
 {¶ 4} A mailman and a trio of landscapers were in the neighborhood and witnessed the events. Each agreed that a car picked up D.L. on the street and returned to Whitt's house, where the confrontation occurred. The mailman stated that he approached the car and saw D.L. crying while she was using the phone, but the landscapers, who were further away,[3]
stated that, while she was walking down the street, she appeared composed and well-groomed.
 {¶ 5} Shaker Heights Patrol Officer Robert Kerr responded to a dispatch at approximately 12:22 p.m. and was the first to arrive at the scene. He saw Whitt standing with the trio of landscapers, identified him as the suspect, brought him over to the patrol car and performed a weapons search that revealed a small pocketknife, which he did not confiscate. He then placed Whitt in the back of the patrol car, with the door open, and questioned him. Kerr explained that Whitt said a woman had come to his house looking for a bachelor party, but he told her she had the wrong address. He said he brought a phone to the door so she could call for a ride and indicated that she had never been inside his house.
 {¶ 6} Kerr stated that D.L. drove past the scene and, when she identified Whitt as her assailant, he shut the patrol car door and turned the investigation over to other officers. Although it is unclear how long Whitt remained in the car, Corporal David Grady claimed Whitt was standing on the street when he agreed to the search of the basement and signed a written form to that effect.
 {¶ 7} Whitt then agreed to go to the police station for an interview and drove there himself, arriving before 1:00 p.m. During the interview, when Detective Richard Mullaney told Whitt that D.L. had accurately described the inside of his house, he changed his story. He claimed a co-worker had given him the phone number and told him it was a prostitution service, that he called and D.L. had come to his house, that he had consensual sex with her, and that she got angry when he refused to pay her $150 fee.
 {¶ 8} He also admitted using a condom during the act which he had discarded in a basement wastebasket but, when Det. Mullaney told him no condom was found in the search, Whitt responded that he had called his cousin and asked him to place it in the upstairs trash. According to the detective, Whitt agreed to be driven to his house by the police at about 2:30 p.m. and, after the police retrieved the condom, brought Whitt back to the station about 4:00 p.m.
 {¶ 9} The detective stated that Whitt agreed to further questioning and then signed a statement which included the acknowledgments that he was a high school graduate, understood he was not under arrest and that he was giving the statement voluntarily, and that the interview had concluded at 5:10 p.m.
 {¶ 10} Whitt returned home and the following day called Det. Mullaney to clarify or amend his written statement. He admitted that he lied about his cousin moving the condom from the basement and stated that he placed it upstairs himself. He also said that he had found the escort service number in the newspaper and not from a co-worker.
 {¶ 11} Several days later Whitt was asked to come to the station, he came voluntarily and, when he arrived, was arrested and advised for the first time of his Miranda[4] rights to avoid self-incrimination. He signed a waiver of his rights and signed another statement for Detective Donald Cichra that memorialized the changes he admitted to during his prior phone call to Det. Mullaney. Furthermore, although absent from this second written statement, Det. Cichra claimed that Whitt admitted that the condom was his, which contradicted his earlier statements that alleged D.L. provided it.
 {¶ 12} Whitt was indicted for kidnapping and rape. The judge denied his motion to suppress his statements to police, and denied in part his motion to suppress the testimony of an emergency room nurse who examined D.L. after the incident. The judge granted the motion to exclude any opinion testimony from the nurse because she had not been identified as an expert and had not submitted a report; nevertheless, the judge stated that the nurse could testify to the fact that she observed an abrasion on D.L.'s vaginal wall during the examination. The jury found him guilty on both counts and he was sentenced to concurrent prison terms of four years each, subject to five years of post-release control, and adjudicated a sexually oriented offender. He states five assignments of error, which are attached as Appendix A.
Admission of Statements
 {¶ 13} Whitt's first two assignments of error claim that his statements to Officer Kerr and to Detective Mullaney should have been suppressed because he was not advised of his Miranda rights before making them. We review these rulings under the same standards used in other suppression motions — we will not overturn the judge's findings of fact unless they are against the manifest weight of the evidence, but we apply historical facts to the legal standard de novo.[5] Once a defendant shows that he was not given Miranda warnings, the State bears the burden of proving that the warnings were unnecessary.[6] If the totality of circumstances shows that the defendant was not subjected to "custodial interrogation," the lack of Miranda warnings will not require exclusion of the statements.[7]
 {¶ 14} The State first claims that Whitt was not subjected to interrogation, but this argument fails because the term "interrogation" means any questioning, and can even include conduct or statements that are not phrased as questions but are nonetheless designed to elicit a response.[8] The State's argument that "interrogation" should be defined as something more than simple questioning has no support, and there is no dispute that Whitt was questioned. However, the police are required to give Miranda warnings before questioning only if the suspect is in custody, which is determined by whether, under the totality of circumstances, a reasonable person in the suspect's position would believe that he was not free to leave.[9]
 {¶ 15} Officer Kerr first approached Whitt for general information at the scene, and was told that two women had run into him with their car. Although Officer Kerr took Whitt to his police car and searched him for weapons, he did not confiscate Whitt's pocketknife, he did not handcuff him, and he did not close the back door of the patrol car while Whitt sat inside. Therefore, Kerr's initial questioning did not occur while Whitt was in custody, because a reasonable person would have considered this procedure part of a normal preliminary investigation.
 {¶ 16} The analysis becomes more difficult, however, when determining whether Whitt was in custody after D.L. identified him and he was shut inside the patrol car. Even though he was allowed out of the car and even drove himself to the police station to meet Det. Mullaney, a reasonable person would understand, at that point, that he was suspected of some offense. Nevertheless, Whitt did not seek to exclude any statements made at the scene other than those made to Officer Kerr and, after he was released from the patrol car he transported himself to the police station. Therefore, we find that he was not in custody prior to arriving at the police station.
 {¶ 17} The State argues that Whitt was not in custody at the police station because he agreed to speak with the detective, drove himself there, and was told that he was not under arrest. Although these factors support the State's argument, other factors also affect the totality of circumstances. Even though he was not taken into custody at the scene, Whitt was reasonably on notice that he was suspected of some offense, and he reasonably knew that he was asked or summoned to the police station in order to explain himself and avoid arrest.
 {¶ 18} Informing a suspect that he is not under arrest does not ameliorate the coercive nature of an encounter if the suspect is reasonably led to believe that he will be placed under arrest if he does not submit to questioning.[10] If the suspect reasonably believes freedom is contingent on submission to questioning he is in custody, regardless of whether he is informed that he is not under arrest. Whitt arrived at the police station at approximately 1:00 p.m., where he spent approximately 90 minutes in an enclosed room with the detective. He spent the next 90 minutes traveling to his house and back to the station in order to retrieve the condom, all the while transported in a police car and accompanied by police officers, while his own car remained parked at the station. When he returned to the station he spent another hour with the detective, culminating in a written statement which he signed over four hours after his initial arrival.
 {¶ 19} There can be no bright-line rule concerning the length of time a suspect spends in police questioning before he is considered in custody, but the longer a person submits to such questioning, the more reasonable the belief that one is not free to leave until the officers' questions are satisfied. Despite Whitt's voluntary arrival, the four-hour period of detention, including a police transport to his house and back to the station, cannot be ignored when examining the totality of circumstances. Nevertheless, Whitt came to the station voluntarily and submitted to questioning despite knowing that he was not under arrest, and despite the fact that he was not physically restrained at any time during Det. Mullaney's questioning. He also signed a form consenting to the search of his house, which also informed him that he had the right to refuse the request. This suggests that he was aware of his right to refuse questioning as well, but voluntarily cooperated with police.
 {¶ 20} Whitt did not testify to challenge any of the testimony concerning the facts of his encounters with the police, and the judge's finding that he was not in custody is not against the manifest weight of the evidence. Despite the length of his questioning at the station, the judge could have concluded that the other factors would allow a reasonable person to understand that he was free to leave without answering any questions. Therefore, the first and second assignments of error are overruled.
Sufficiency and Manifest Weight of the Evidence
 {¶ 21} We address a sufficiency challenge to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[11] A sufficiency challenge presents a question of law and does not allow the reviewing court to weigh the evidence.[12] The purpose of manifest weight review is to determine "whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction."[13] Instead of looking for legally sufficient evidence, manifest weight review tests whether the verdict is supported by substantial evidence.[14] Although the scope of review broadens, the standard of review is deferential, and we will not reverse unless it appears there has been a miscarriage of justice.[15]
 {¶ 22} Whitt's sufficiency challenge makes no specific attack, but simply claims the evidence is generally insufficient to support the elements of rape and kidnapping. Although the record suggests a possible challenge to the mens rea element of purpose,[16] the evidence also showed that he locked the door to the house, using a key, which prevented D.L. from leaving until he unlocked it. In the absence of any evidence or argument to the contrary, this evidence is sufficient to infer Whitt's purpose to compel D.L. to have sex with him, and her testimony that he removed her dress and panties without her consent is sufficient evidence of force or the threat of force. The same evidence can be used to sustain comparable elements of the kidnapping conviction, and the remaining elements of the offenses are not disputed. Therefore, we find the evidence was sufficient to sustain a conviction.
 {¶ 23} Whitt claims, as part of both his sufficiency and manifest weight challenges, that D.L.'s testimony was so incredible that no rational factfinder could rely on it. Although we do not foreclose the possibility that evidence at trial could be so lacking in credibility that it would fail a test of sufficiency, such evidence would also fail a test of manifest weight. Furthermore, a sufficiency challenge based on credibility would have to surpass even the standard used for manifest weight challenges, since the remedy for sufficiency would bar retrial.[17] Therefore, if we find D.L's testimony adequate to withstand manifest weight review, that finding will also dispose of a sufficiency challenge based on her credibility.
 {¶ 24} Whitt's challenge to D.L.'s credibility focuses on the unlikelihood of her testimony that her occupation is a "dancer" for bachelor parties. She stated that she advertised as a dancer and masseuse, and was most frequently hired to dance at bachelor parties at a rate of $150 per hour. She stated that she was often called to parties that occurred in the daytime hours on weekdays, and that she was rarely asked to remove her clothes while dancing. Regardless of whether she was completely truthful about the details of her occupation, the jury was still required to determine whether she consented to have sex with Whitt or submitted because of force or the threat of force.
 {¶ 25} The jury not only heard D.L.'s testimony concerning the events inside Whitt's house, it also heard the tape of her 911 call to report a rape immediately after leaving the house, that she appeared to be upset and crying, and that her immediate description of the incident did not significantly differ from her trial testimony. Furthermore, her assertion that the door to Whitt's house could be locked in a way that required a key to exit was not disputed and, as noted, this evidence could be used to infer his intent to keep her in the house against her will. Therefore, even if the jury believed that D.L.'s occupation sometimes included harlotry, it had enough evidence to conclude that she did not consent to sex with Whitt. The third and fourth assignments are overruled.
Prosecutorial Misconduct
 {¶ 26} The fifth assignment claims the prosecutor deliberately referred to excluded evidence in closing argument, and that this misconduct deprived Whitt of a fair trial. The argument concerned medical testimony provided by Deresa Mitchell, R.N., who examined D.L. at the emergency room following the reported rape. The judge agreed that her opinion testimony would be excluded but permitted her factual testimony that she observed an abrasion on D.L.'s vaginal wall, although she allowed Whitt to present evidence that D.L. had consensual sex at about 2:00 a.m. that same day as an alternative explanation for the abrasion.
 {¶ 27} Despite the judge's ruling excluding expert evidence, the prosecutor introduced foundation testimony ordinarily reserved for qualifying a witness as an expert, then elicited Ms. Mitchell's opinion that vaginal wall abrasions are rare because of the strength of the muscle in that area. Although Whitt's objections to this testimony were sustained, the jury heard her answers. The judge also allowed her to testify about the age of the abrasion. After Ms. Mitchell's testimony, the judge denied Whitt's motion for a mistrial, but gave a limited cautionary instruction to the jury, which concerned only her response to a question about whether a rape occurred.
 {¶ 28} During closing argument, the prosecutor referred to her testimony that an abrasion was present, and stated that the evidence established the element of force. The prosecutor also pointed to her expert qualifications, and referred to her testimony about the rarity of vaginal abrasions and the strength of the vaginal muscle, even though Whitt's objections to these questions and responses had been sustained.
 {¶ 29} The prosecutor also argued that the jury could infer force from the evidence of abrasion alone, without any further assistance from Ms. Mitchell's testimony. In rebutting Whitt's closing, the prosecutor stated that the nurse was qualified to present expert testimony but had been prevented from giving an opinion by Whitt's objections. Whitt again moved for mistrial at the close of argument, but the judge denied the motion and also refused to give further cautionary instructions, stating that she did not want to "emphasize the point" to the jury.
 {¶ 30} Whitt does not challenge Ms. Mitchell's testimony directly, even though her opinion on the age of the abrasion was tantamount to an opinion on its origin,[18] and he does not challenge the admissibility of her factual testimony even though evidence that she observed an abrasion might have been irrelevant or unfairly prejudicial without expert testimony to explain its significance.[19] Nor has he challenged the prosecutor's conduct in presenting her testimony, even though it appears the prosecutor deliberately sought to qualify her as an expert and introduce her opinions and conclusions despite the judge's ruling that she could not present such testimony. Whitt's only complaint concerns the prosecutor's attempt to rely on excluded evidence during closing argument and, although we agree that those statements were improper, we find that the prosecutor's argument, standing alone, is insufficient to show prejudice.
 {¶ 31} Prosecutorial misconduct in closing argument is grounds for reversal only if it deprives the defendant of a fair trial, which requires a finding of prejudice as well as impropriety.[20] Whitt's failure to challenge the evidence itself on appeal negates a finding of prejudice. Even if the prosecutor had not referred to Ms. Mitchell's opinions concerning the abrasion, the jury still could have used the evidence of its existence to infer force, and Whitt has not challenged the admissibility of this testimony on appeal. Therefore, even though the prosecutor improperly referred to excluded evidence, improperly blamed Whitt for the State's lack of expert testimony and improperly suggested the jury draw inferences against him because of it, we find Whitt's acquiescence, on appeal, in the admission of testimony concerning Ms. Mitchell's observance of the abrasion and her testimony concerning its age, sufficient to defeat a claim of prejudice based on the prosecutor's closing argument. The fifth assignment is overruled.
Sentencing
 {¶ 32} Whitt's final assignment claims the judge failed to make a necessary finding before sentencing him to a prison term greater than the minimum. R.C. 2929.14(B) states that an offender who has not previously served a prison term is entitled to serve the shortest term authorized unless the judge finds that the minimum sentence will "demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." At sentencing the judge recognized the need to make one of these findings before departing from the minimum sentence, and then discussed a number of factors she considered relevant to making those findings. After discussing those factors, however, the judge did not expressly make either of the findings necessary under R.C. 2929.14(B). The judge stated:
"There was no attempt or actual threat of physical harm to the victim inthis case. No deadly weapon was used. The offense was part of some typeof criminal activity per se. There is a dispute, but the jury has spokenthat he proceeded to have sexual intercourse with the victim without herpermission, whether she was coming there as an exotic dancer or not, theCourt has to weigh and consider when it imposes the sentence. And theCourt finds obviously that this offense, which is a sex offense, is oneof the factors it must consider.
"In weighing all these factors, the Court also must note the recidivismlikely factors, there is one that did stick out in the Court's mind, andthat comes from the Court Psychiatric Clinic report which indicates thatthe defendant has a medium to low risk of reoffending. In fact, it saysthat the defendant has a likelihood of 19 percent to recommit thisoffense within the next 15 years, and the Court does apply that when itimposes its sentence because this is a serious consideration the Courthas weighed with regard to the serious factors and the recidivism morelikely factors.
"So for all those reasons that the Court has given, the Court does find,in fact, it also has to be similar and in kind to other sentences handeddown for similar crimes. So the Court finds that a four year sentence isappropriate."
 {¶ 33} The judge's remarks appear to relate more to general sentencing findings under R.C. 2929.12, rather than to findings concerning the presumption of minimum sentencing. Therefore, even though she recognized her need to make the findings, we cannot conclude on this record that she made a finding allowing departure from the minimum under R.C. 2929.14(B). Not only do her remarks fail to make an express finding, the lack of a clear connection between her comments and one of the findings of R.C. 2929.14(B) prevents a conclusion that any finding was made.[21]
 {¶ 34} Furthermore, the fact that Whitt was convicted of a "sex offense" does not, standing alone, add to the seriousness of Whitt's conduct or the need to protect the public. Every rape is a sex offense; therefore, one rape cannot be more serious than another based only upon the fact that it involves sex. Rape is also classified as a first degree felony punishable by a prison term of three to ten years. As such, it is presumptively similar in seriousness to other first degree felonies. If the legislature considered rape more serious than other offenses because it involved sex, it could have classified it separately. Therefore, we also find that the judge's consideration of rape as a "sex offense" was irrelevant. The sixth assignment is sustained, and Whitt's sentence must be vacated and the case remanded for resentencing.
 {¶ 35} The judgment is affirmed in part, vacated in part, and remanded for resentencing.
APPENDIX A — ASSIGNMENTS OF ERROR
 {¶ 36} "I. The trial court erred in violation of the Ohio and United States Constitutions when it refused to suppress Mr. Whitt's statement to officer Kerr, when such statement was made in custody, during questioning and without the provision of miranda rights."
 {¶ 37} "II. The trial court erred in violation of the Ohio and United States Constitutions when it refused to suppress Mr. Whitt's statement to detective Mullaney, when such statement was made in custody, during questioning and without the provision of miranda rights."
 {¶ 38} "III. Appellant Whitt's convictions were not supported by sufficient evidence in violation of the fifth and fourteenth amendments to the United States Constitution and article I, section 10, to the Ohio constitution."
 {¶ 39} "IV. The convictions against Mr. Whitt were against the manifest weight of the evidence because there was no substantial evidence upon which a trier of fact could reasonably conclude that the elements had been proven beyond a reasonable doubt."
 {¶ 40} "V. The misconduct of the prosecutor in closing argument violated Mr. Whitt's rights to a fair trial guaranteed by the due process provisions of article i, section 16 of the Ohio constitution and thefourteenth amendment to the United States Constitution."
 {¶ 41} "VI. The trial court erred when it imposed more than the minimum term of imprisonment on Mr. Whitt without making the necessary findings required by R.C. 2929.14(B)."
James J. Sweeney, J., and Colleen Conway Cooney, J., Concur
[1] R.C. 2907.02.
[2] R.C. 2905.01.
[3] The landscapers were working on the other side of the street and two to four houses away.
[4] Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694.
[5] Cleveland v. Morales, Cuyahoga App. No. 81083, 2002-Ohio-5862, at ¶ 10-12; State v. Brown (Jan. 25, 1999), Scioto App. No. 98CA2575.
[6] Id.
[7] State v. Gumm, 73 Ohio St.3d 413, 429, 1995-Ohio-24,653 N.E.2d 253.
[8] Rhode Island v. Innis (1980), 446 U.S. 291, 300-301,100 S.Ct. 1682, 64 L.Ed.2d 297.
[9] Gumm, 73 Ohio St.3d at 429.
[10] State v. Thompson (1995), 103 Ohio App.3d 498, 502-503,659 N.E.2d 1297.
[11] (Emphasis sic.) State v. Stallings, 89 Ohio St.3d 280, 289,2000-Ohio-164, 731 N.E.2d 159 (quoting Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560).
[12] State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 415,485 N.E.2d 717, 720.
[13] State v. Getsy, 84 Ohio St.3d 180, 193, 1998-Ohio-533,702 N.E.2d 866.
[14] Id.
[15] Id. at 194.
[16] See State v. Wilkins (1980), 64 Ohio St.3d 382, 386-387, 18 O.O.3d 528, 415 N.E.2d 303.
[17] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[18] Ms. Mitchell was allowed to testify that the abrasion appeared less than twelve hours old, and there was evidence that D.L.'s consensual sex occurred more than twelve hours before the examination. Therefore, there was little point in preventing her from opining that the abrasion was caused by sex with Whitt.
[19] See, e.g., United States v. Kendrick (C.A. 4, 1964), 331 F.2d 110,112 (acknowledging "serious questions" when finder of fact reviews certain evidence without expert assistance); Wingfield v. UnitedTechnologies Corp. (D.Conn. 1988), 678 F. Supp. 973, 983 (without expert testimony, statistical evidence was "meaningless, confusing, and irrelevant."). We agree, however, that the question of whether the jury should have been allowed to hear the abrasion evidence without expert testimony is not appropriate for plain error review. United States v.Montas (C.A. 1, 1994), 41 F.3d 775, 784; State v. Barnes, 94 Ohio St.3d 21,27, 2002-Ohio-68, 759 N.E.2d 1240.
[20] State v. Phillips, 74 Ohio St.3d 72, 90, 1995-Ohio-171,656 N.E.2d 643.
[21] State v. Edmonson, 86 Ohio St.3d 324, 328, 1999-Ohio-110,715 N.E.2d 131.