OPINION
{¶ 1} Appellant Lorenzo Bundy appeals his multiple-count conviction on drug offenses in the Richland County Court of Common Pleas. The relevant facts leading to this appeal are as follows.
 {¶ 2} On October 20, 2003, Metropolitan-Richland Drug Task Force ("Metrich") officers utilized a confidential informant, Derrick Powell, to make a controlled crack cocaine purchase in Mansfield, Ohio. Powell was equipped with a small disk recorder and wire transmitter and provided with fifty dollars in cash. After being dropped off by Metrich, Powell met with appellant, who used the street name "Remmie," on Superior Avenue and returned with two rocks of crack. Powell then turned over his evidence to the officers. A second controlled buy using Powell was conducted the next day. Later that month, appellant was indicted on two counts of trafficking in cocaine.
 {¶ 3} In April 2004, based on information from Powell and another informant, Rebecca Morgan, a search warrant was obtained and executed at appellant's residence. Appellant was thereafter indicted on two counts of possession of heroin and cocaine.
 {¶ 4} The two aforesaid indictments were joined prior to appellant's jury trial, which commenced on May 2, 2005. During the State's case in chief, both informants, Powell and Morgan, were called to testify. The jury returned verdicts of guilty on all four counts in the combined indictments. Appellant was subsequently sentenced to a total of two years and eight months in prison.
 {¶ 5} Appellant filed a notice of appeal on June 1, 2005. He herein raises the following four Assignments of Error:
 {¶ 6} "I. DEFENDANT/APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 7} "II. THE COURT COMMITTED PLAIN ERROR BY JOINING THE TWO INDICTMENTS FOR TRIAL.
 {¶ 8} "III. THE COURT COMMITTED PLAIN ERROR BY ALLOWING THE TESTIMONY OF OTHER ACTS.
 {¶ 9} "IV. IT WAS PLAIN ERROR FOR THE TRIAL COURT TO ALLOW THE INFORMANT TO TELL THE JURY WHAT WAS ON THE RECORDING."
 I. {¶ 10} In his First Assignment of Error, appellant contends he was deprived of the effective assistance of counsel at trial. We disagree.
 {¶ 11} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675, 693 N.E.2d 267.
 {¶ 12} Appellant contends that his trial counsel was ineffective for the following: (1) failing to object to testimony that appellant had a gun when the witness did not have personal knowledge; (2) failure to object to informant Powell's testimony regarding the contents of the recordings of the drug buys; (3) failure to object to the admission of a prior statement of informant Powell; (4) failure to object to alleged hearsay by Metrich Officer Wheeler, who obtained the search warrant; (5) failure to object to informant Morgan's testimony; (6) failure to cross-examine the informants as to how they were paid for the drugs buys; and (7) failure to object to the joinder of the indictments.
 {¶ 13} Of these specific contentions, numbers (2), (5), and (7) are closely related to appellant's remaining assigned errors, and will be analyzed infra. Of the remaining contentions, numbers (1), (3), and (4) go to defense counsel's failure to object, while number (6) raises a cross-examination issue.
 {¶ 14} It is well-settled that trial tactics or strategies are viewed with the presumption that effective legal counsel was rendered. State v. Nash (March 27, 2000), Stark App. No. 1999CA00197, citing State v. Bradley (1989), 42 Ohio St.3d 136,144, 538 N.E.2d 373. Ohio courts have recognized that objections tend to disrupt the flow of a trial and are often considered technical and bothersome by the fact-finder; hence, competent counsel may reasonably hesitate to object. See State v.Jackson, Cuyahoga App. No. 86105, 2006-Ohio-174, ¶ 88, citingState v. Campbell, 69 Ohio St.3d 38, 53, 1994-Ohio-492, and Jacobs, Ohio Evidence (1989), at iii-iv. Furthermore, the scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel. State v. Conway, 109 Ohio St.3d 412,430, 848 N.E.2d 810. Upon full review, we are unpersuaded that appellant was prejudiced in this regard by his trial counsel's performance. Strickland, supra.
 {¶ 15} We therefore find no reversible error on grounds of ineffective assistance of counsel. Appellant's First Assignment of Error is overruled.
 II. {¶ 16} In his Second Assignment of Error, appellant contends that the trial court erred by permitting joinder of the two indictments. We disagree.
 {¶ 17} "Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." State v.Schaim, 65 Ohio St.3d 51, 58, 600 N.E.2d 661, 1992-Ohio-31. Crim.R. 14 reads as follows: "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires." The general rule is that the defendant bears the burden under Crim.R. 14 to prove prejudice and that the trial court abused its discretion in denying severance. State v.Coley (2001), 93 Ohio St.3d 253, 259, 754 N.E.2d 1129, citingState v. Torres (1981), 66 Ohio St.2d 340, 20 O.O.3d 313,421 N.E.2d 1288, syllabus.
 {¶ 18} In determining whether appellant was prejudiced by joinder of multiple offenses, we must determine (1) whether evidence of the other crimes would be admissible, even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. Schaim, supra, citing State v.Hamblin (1988), 37 Ohio St.3d 153, 158-159, 524 N.E.2d 476, reversed on other grounds, (C.A.6 Ohio), 354 F.3d 482. "If the evidence of other crimes would be admissible at separate trials, any `prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trial,' and a court need not inquire further." Id., citing Drew v. United States
(C.A.D.C. 1964), 331 F.2d 85, 90.
 {¶ 19} The second indictment in the case sub judice was based on information from confidential informants Powell and Morgan, subsequent to appellant's move from Superior Avenue to East First Street. On April 15, 2004, Metrich officers executed a search warrant at the latter address. Appellant fled out a basement door at that time, but was apprehended by an assisting FBI agent several blocks away. The search of the First Street residence revealed large amounts of crack cocaine and heroin, as well as a loaded firearm and extra magazine, hidden in between the couch cushions, an area which Morgan had previously identified as the hiding place.
 {¶ 20} Having reviewed the evidence in this case, we find the joined offenses share significant common features sufficient to establish a modus operandi that identify appellant as an individual possessing and trafficking in illegal drugs in the area in question, and such evidence would have been admissible in separate trials. We thus conclude appellant was not prejudiced by the trial court's joinder of the two indictments. As we have previously recognized, "[a]bsent some abuse of discretion, to be demonstrated by a clear showing of prejudice and the consequent denial of a fair trial, the [severance] determination is not subject to reversal." State v. DeMastry, 155 Ohio App.3d 110,127, 799 N.E.2d 229, 2003-Ohio-5588, quoting State v.Cartellone (1981), 3 Ohio App.3d 145, 151, 3 OBR 163,444 N.E.2d 68 (internal quotations omitted).
 {¶ 21} Appellant's Second Assignment of Error is overruled.
 III. {¶ 22} In his Third Assignment of Error, appellant argues the trial court committed plain error by permitting "other acts" evidence at trial. We disagree.
 {¶ 23} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 180, 31 OBR 375, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402. Our task is to look at the totality of the circumstances in the particular case and determine whether the trial court acted unreasonably, arbitrarily, or unconscionably in allowing the disputed evidence. See State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027.
 {¶ 24} Evid.R. 404(A) provides that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid.R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. The Rule states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 25} Appellant specifically challenges testimony by confidential informant Morgan that she had purchased cocaine and heroin on two different unspecified occasions, and that appellant had a gun. Tr. at 230. Upon review of the record, we find Morgan's testimony was properly admitted as proof of a common scheme or plan in regard to the sale and possession of illegal drugs by appellant. Furthermore, we have recognized that when the crime charged is drug related, evidence of firearms is both relevant and probative. See State v. Smith (March 16, 1992), Stark App. No. CA-8715, citing United States v. Weiner (2nd Cir. 1976), 534 F.2d 15, 18.
 {¶ 26} Accordingly, appellant's Third Assignment of Error is overruled.
 IV. {¶ 27} In his Fourth Assignment of Error, appellant contends the trial court committed plain error in permitting the informant, Powell, to interpret before the jury portions of the tape recording of the drug buy. We disagree.
 {¶ 28} Appellant's argument pertains to the following portions of the record:
 {¶ 29} "BY MR. TUNNELL:
 {¶ 30} "Q. Do you recognize that voice?
 {¶ 31} "A. Yes.
 {¶ 32} "Q. Who is that?
 {¶ 33} "A. Detective Burks.
 {¶ 34} "Q. Okay. Who's Detective Burks?
 {¶ 35} "A. Bob Burks with the METRICH Drug Task Force.
 {¶ 36} "Q. Okay.
 {¶ 37} "(Thereupon, a portion of State's Exhibit 4 was played for the jury.)
 {¶ 38} "Q. What we're hearing there is you walking. Is that correct?
 {¶ 39} "A. Yes.
 {¶ 40} "Q. And that goes on for a considerable period of time, does it not?
 {¶ 41} "A. Yes.
 {¶ 42} "Q. All right.
 {¶ 43} "MR. TUNNELL: Can counsel approach, Judge?
 {¶ 44} (There was an off-the-record conference among Court and counsel.)
 {¶ 45} "BY MR. TUNNELL:
 {¶ 46} "Q. Now we're going to go ahead and fast-forward a little bit through you walking up until — you've already testified there's a point at which you make contact at the house with someone.
 {¶ 47} "A. Yes.
 {¶ 48} "Q. Who was that?
 {¶ 49} "A. Miss Ward on Hedges and Arch.
 {¶ 50} "Q. Okay. On your way to that location, did you pass by the location on Mason that you thought the Defendant would be at?
 {¶ 51} "A. Yes.
 {¶ 52} "Q. And why didn't you stop there?
 {¶ 53} "A. Where?
 {¶ 54} "Q. On Mason.
 {¶ 55} "A. Mason, I went to Mason first.
 {¶ 56} "Q. Okay.
 {¶ 57} "A. Then I came back to Hedges and Arch.
 {¶ 58} "Q. Okay.
 {¶ 59} "MR. TUNNELL: Stop it.
 {¶ 60} "Q. What did we just hear?
 {¶ 61} "A. You heard when I walked up and walked up on them when he was in the car.
 {¶ 62} "Q. Walked up on who?
 {¶ 63} "A. Remmie. So I walked up on him in the car. And it was him and I think a couple girls in the car and another guy.
 {¶ 64} "Q. Okay.
 {¶ 65} "A. I asked him, What's up? Told him I wanted a 50. He said, Hold up. I'm going up to the house. That's why you hear music. I'm standing right there by the car. He went into the house a little bit, came right back out and game me the dope, and I left.
 {¶ 66} "Q. All right.
 {¶ 67} "(Thereupon, a portion of State's Exhibit 4 was played for the jury.)
 {¶ 68} "Q. Right there, that last word that was said, what was that?
 {¶ 69} "A. 50.
 {¶ 70} "Q. Who said that?
 {¶ 71} "A. Me.
 {¶ 72} "Q. To who?
 {¶ 73} "A. To Bundy.
 {¶ 74} "Q. Okay.
 {¶ 75} "(Thereupon, a portion of State's Exhibit 4 was played for the jury.)
 {¶ 76} "MR. TUNNELL: Stop.
 {¶ 77} "Q. Who's that talking?
 {¶ 78} "A. I think I spoke to the lady that was in the car and said, Hey, how you doing?
 {¶ 79} "(Thereupon, a portion of State's Exhibit 4 was played for the jury.)
 {¶ 80} "MR. TUNNELL: Stop.
 {¶ 81} "Q. That right there, what was that?
 {¶ 82} "A. The mike where I had to adjust myself.
 {¶ 83} "Q. Okay.
 {¶ 84} "(Thereupon, a portion of State's Exhibit 4 was played for the jury.)
 {¶ 85} "MR. TUNNELL: Stop.
 {¶ 86} "Q. Who was that speaking?
 {¶ 87} "A. That was me.
 {¶ 88} "Q. And what did you ask him?
 {¶ 89} "A. I said was Remmie around.
 {¶ 90} "Q. And what was his answer?
 {¶ 91} "A. Yeah, he's back now.
 {¶ 92} "MR. TUNNELL: Okay.
 {¶ 93} "(Thereupon, a portion of State's Exhibit 4 was played for the jury.)
 {¶ 94} "MR. TUNNELL: Stop.
 {¶ 95} "Q. This is State's Exhibit 5. We've had previous testimony that there are two recordings made —
 {¶ 96} "A. Yes.
 {¶ 97} "Q. — as you're walking.
 {¶ 98} "A. Yes.
 {¶ 99} "Q. And that's your understanding as well?
 {¶ 100} "A. Yes.
 {¶ 101} "Q. Okay.
 {¶ 102} "(Thereupon, a portion of State's Exhibit 5 was played for the jury.)
 {¶ 103} "Q. What did we just hear then?
 {¶ 104} "A. That was me at Miss Ward (sic) house asking for him and his girlfriend.
 {¶ 105} "Q. Okay.
 {¶ 106} "(Thereupon, a portion of State's Exhibit 5 was played for the jury.)
 {¶ 107} "Q. After you asked for him at Miss Ward's house, where did you go?
 {¶ 108} "A. To Superior Avenue.
 {¶ 109} "(Thereupon, a portion of State's Exhibit 5 was played for the jury.)
 {¶ 110} "MR. TUNNELL: Stop.
 {¶ 111} "Q. Who was that talking?
 {¶ 112} "A. That was me.
 {¶ 113} "Q. What did you say?
 {¶ 114} "A. I asked him where he'd been, I was looking for him.
 {¶ 115} "Q. And had you?
 {¶ 116} "A. Yes.
 {¶ 117} "(Thereupon, a portion of State's Exhibit 5 was played for the jury.)
 {¶ 118} "MR. TUNNELL: Stop.
 {¶ 119} "Q. What did we hear there?
 {¶ 120} "A. That's when I talked to him. And then I talked to the ladies. You could hear them outside. There's kids out there, and you can hear the music.
 "* * * {¶ 121} "MR. TUNNELL: I'm going to play State's Exhibit 15.
 {¶ 122} "(Thereupon, a portion of State's Exhibit 15 was played for the jury.)
 {¶ 123} "BY MR. TUNNELL:
 {¶ 124} "Q. Who is that speaking?
 {¶ 125} "A. Sergeant Powers.
 {¶ 126} "Q. Okay. And how do you know Sergeant Powers?
 {¶ 127} "A. He was the head of the METRICH, police sergeant.
 {¶ 128} "Q. Okay.
 {¶ 129} "(Thereupon, a portion of State's Exhibit 15 was played for the jury.)
 {¶ 130} "Q. Mr. Powell, what did we just hear on that tape?
 {¶ 131} "A. You heard me walk up to the house and knock on the door. Mr. Bundy came to the door. I went in. I believe there were some girls in there, a couple other guys.
 {¶ 132} "I asked him for a 50. He went back toward the kitchen for a couple minutes or so, and then he came back and gave me the dope. And I gave him the money and left.
 {¶ 133} "(Thereupon, a portion of State's Exhibit 15 was played for the jury.)
 {¶ 134} "Q. What was that?
 {¶ 135} "A. That was me knocking at the door.
 {¶ 136} "Q. Okay.
 {¶ 137} "(Thereupon, a portion of State's Exhibit 15 was played for the jury.)
 {¶ 138} "Q. Who was that talking?
 {¶ 139} "A. That was me. I said — when I first came in, I said, What's up? I don't know if you can hear me, but I said, What's up? And I said, Let me get 50.
 {¶ 140} "Q. And what did you mean by that?
 {¶ 141} "A. "$50 worth of crack cocaine.
 {¶ 142} "Q. Okay." Tr. at 178-185.
 {¶ 143} We note appellant provides no caselaw to support his essential argument that the tape should have been permitted to "speak for itself." Appellant's Brief at 13. However, in Statev. Prysock (July 16, 1987), Franklin App. No. 86AP-492, the Tenth District Court of Appeals addressed a defendant's claim that the trial court should not have allowed the prosecution, during closing arguments, to read from a State-prepared transcript of a defendant's taped interview with law enforcement. The court found no error in the trial court's decision to allow the prosecution to utilize the transcript, recognizing that the jury had also heard the taped interview itself. Id. The case ofState v. Hopkins, Franklin App. No. 05AP-338, 2006-Ohio-232, addresses a similar argument involving a 911 call transcription. The court, citing Prysock, concluded that the trial court did not abuse its discretion in admitting into evidence the appellee's transcription of the 911 recording: "Likewise, under the dictates of Prysock, the trial court did not allow appellee to usurp the jury's powers when the trial court admitted into evidence the transcript that appellee prepared. As in Prysock,
the jury here heard the 911 tape recording and, as trier of fact, was able to ultimately ascertain the contents of the 911 recording irrespective of appellee's transcription." Id. at ¶ 28.
 {¶ 144} Applying similar reasoning to the case sub judice, we find no plain error in the allowance of Powell's narrative interpretation of the tapes, where the jury was able to independently review the recordings themselves.
 {¶ 145} Appellant's Fourth Assignment of Error is therefore overruled.
 {¶ 146} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.
Wise, P.J. Farmer, J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
Costs to appellant.