[Cite as *State v. Blakely* , 2012-Ohio-3841.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                        :

     Plaintiff-Appellee                        :               C.A. CASE NO.    25120

v.                                                  :               T.C. NO.    11CRB11026

ROBERT J. BLAKELY, II                       :               (Criminal appeal from
                                                                       Municipal Court)

     Defendant-Appellant                       :

                                                    :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   24th   day of     August    , 2012.

. . . . . . . . . .

TROY B. DANIELS, Atty. Reg. No. 0084957, Assistant City Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

JOHN S. PINARD, Atty. Reg. No. 0085567, 120 W. Second Street, Suite 703, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

       **{¶ 1}** Robert J. Blakely appeals from a judgment of the Dayton Municipal

Court, which convicted him after a trial to the court of one count each of domestic violence, assault, and obstruction of official business. The court sentenced Mr. Blakely to 180 days in jail for domestic violence, to 180 days for assault, and to 90 days for obstructing official business, with credit for one day served; the court suspended the sentences on the condition that Mr. Blakely comply with the terms of intensive probation. The court placed Mr. Blakely on intensive probation for a period not to exceed one year, ordered him to complete a "stop the violence" program and a drug and alcohol assessment, and imposed 90 days of electronic home detention.

{¶ 2} For the reasons that follow, we will affirm Mr. Blakely's convictions, but we will remand for the trial court to correct the sentence it imposed.

I

{¶ 3} Mr. Blakely's conviction arose from an alleged altercation with his wife, Patricia, at their home in Dayton on November 6, 2011. As a result of the altercation and the circumstances surrounding his arrest, Mr. Blakely was charged with one count each of domestic violence, assault, resisting arrest, and obstructing official business. He was tried to the court in March 2012.

{¶ 4} It is undisputed that the Blakelys had been out to dinner on November 6 and that both had been drinking. When they arrived home, Rick Davis, Mr. Blakely's brother-in-law, was at their home, which indicated to Mrs. Blakely that Mr. Blakely intended to go back out. Mr. Blakely had, in fact, made plans with Davis earlier in the day to play billiards that night. When Mrs. Blakely realized Mr. Blakely's plan, she attempted to stop him from leaving their home, because he apparently planned to drive and he had been

drinking. The parties dispute whether Mrs. Blakely fell in the course of this dispute, as Mr. Blakely claims, or whether she was pushed, as the State claims, but she suffered an injury to her head.

**{¶ 5}** The state's evidence at trial established the following facts:

**{¶ 6}** The Dayton Police received at least two 911 calls regarding a domestic dispute at the Blakelys' home shortly after midnight on November 6, 2011. In the first call, Mr. Blakely's daughter reported that her father threw something at her step-mother and pushed her stepmother down. During a 911 call from Mr. Blakely himself, requesting an ambulance for his wife, the dispatcher asked what had happened to Mrs Blakely. Mr. Blakely's recorded response was somewhat difficult to understand, but the trial court concluded that Mr. Blakely said he had thrown her down; Mrs. Blakely is heard saying "you, you" in the background. In a conversation with the dispatcher a short time later, Mr. Blakely said that Mrs. Blakely fell. The 911 recordings were played at trial.

**{¶ 7}** Three officers responded to the Blakelys' house. Officer Anthony Sawmiller was the first officer on the scene. After encountering the Blakelys' daughter (one of the 911 callers) on the driveway, Sawmiller entered the Blakelys' kitchen through the garage. He found Mr. Blakely kneeling over Mrs. Blakely, who was lying on the floor with a pool of blood around her head. Sawmiller tried to talk with Mrs. Blakely, but he could not hear her responses because Mr. Blakely "kept advancing toward [him] and saying she fell." According to Sawmiller, Mr. Blakely was yelling that "she fell" throughout this encounter and repeatedly disobeyed Sawmiller's orders that he (Mr. Blakely) step back.

**{¶ 8}** Sawmiller advised Mr. Blakely that he would be placed in handcuffs for

safety reasons. After one wrist was cuffed, Mr. Blakely "rotated" and turned his body to the left, which prevented Sawmiller from cuffing the other wrist. After a short time, Sawmiller took Mr. Blakely to the floor in order to fasten the other handcuff. Additional officers and medics arrived as Sawmiller completed handcuffing Mr. Blakely; however, Mr. Blakely continued to yell such that the officers and medics could not conduct a conversation with Mrs. Blakely. Mr. Blakely was also kicking his legs toward Sawmiller and Mrs. Blakely, creating a risk of injury to them and to the paramedics. As a result, the officers took Mr. Blakely to a cruiser.

{¶ 9} Sawmiller and another responding officer, Colin Patterson, testified that Mr. Blakely exhibited symptoms of intoxication during this encounter, including a strong odor of an alcoholic beverage, slurred speech, and a flushed face, in additional to his raucous behavior.

{¶ 10} In the kitchen, Sawmiller observed blood on the top of the back of a dining chair, a broken candle on an island counter, and a piece of decorative pottery overturned by the sliding glass door.

{¶ 11} As the officers moved Mr. Blakely outside the house, he continued to yell that "she fell," although other yelling was in the form of noises rather than words. After he was placed inside the cruiser, he repeatedly complained that his handcuffs were too tight and were cutting off circulation. Several officers confirmed that the handcuffs were not too tight. However, because of Mr. Blakely's complaints about the handcuffs and other minor scrapes and abrasions he had received, the officers transported him to Grandview Hospital to be checked. Mr. Blakely banged his head on the plexiglass barrier inside the cruiser, yelled,

and rolled around in the back of the cruiser on the way to the hospital.

{¶ 12} According to the officers, while at the hospital, Mr. Blakely made numerous physical complaints which were evaluated by the medical staff and determined to be unfounded. He was eventually transported to the jail.

{¶ 13} Sawmiller later questioned Mrs. Blakely at the hospital. She had suffered a two-inch "hematoma" at the base of her skull; pictures taken at the hospital depicted a two-inch gash in Mrs. Blakely's scalp.

{¶ 14} At the close of the State's case, Mr. Blakely moved for an acquittal on the count of resisting arrest, pursuant to Crim.R. 29, on the ground that he was not under arrest at the time of the behavior in question. The trial court granted this motion.

{¶ 15} Mrs. Blakely, Rick Davis, and Mr. Blakely testified for the defense. Mrs. Blakely testified that, in trying to prevent her husband from leaving the house, she closed the garage door with her husband inside and tried to grab the car keys inside the house before he could get them. While doing so, the Blakelys' two dogs were jumping on her legs and she "just fell," hitting her head. She remembered Mr. Blakely and Davis putting a towel on her head, but did not see anything else in the immediate aftermath of her fall, and did not see Mr. Blakely try to harm the officers. Mrs. Blakely claimed that she and Mr. Blakely had been "up in each others faces" in the garage, including "belly bumping," but claimed that she fell in the kitchen and did not have contact with Mr. Blakely there. Mrs. Blakely denied telling the police officers that Mr. Blakely had pushed her.

{¶ 16} Rick Davis testified that the Blakelys argued for about 25 to 30 minutes in their garage about Mr. Blakely's going out with Davis. During this time, Davis waited on

the back deck drinking a beer. From the deck, Davis heard the garage door slam, saw Mrs. Blakely and the Blakelys' dogs, and watched Mrs. Blakely fall in the kitchen. According to Davis, Mr. Blakely was still in the garage when Mrs. Blakely fell. Davis denied that Mr. Blakely was intoxicated, but admitted that Mr. Blakely's speech was slurred. Davis left before the police arrived because he thought there might be an outstanding warrant for his arrest.

{¶ 17} Finally, Mr. Blakely testified in his own defense. He testified that Mrs. Blakely had shut him in the garage and she fell when she slammed the door between the house and the garage. He entered the house with his daughter when he heard Davis curse. According to Mr. Blakely, Mrs. Blakely told his daughter to call 911. Mr. Blakely also called 911, and thought about taking Mrs. Blakely to the hospital himself due to the slow response.

{¶ 18} The State recalled Sawmiller and Patterson to rebut the testimony of the defense witnesses. Sawmiller testified that, when he interviewed Mrs. Blakely at the hospital on the night she sustained her injuries, she provided a different version of events than that recounted at trial. According to Sawmiller, Mrs. Blakely stated that Mr. Blakely had thrown a towel at her and had pushed her. Mrs. Blakely also stated at that time that Mr. Blakely had pushed her on previous occasions.

{¶ 19} On rebuttal, Patterson stated that only the Blakelys and their daughter had been at the house when officers responded, and that Mr. Blakely never mentioned to them that night that Rick Davis had been present at the time of Mrs. Blakely's injury.

{¶ 20} The trial court found Mr. Blakely guilty of domestic violence, assault, and

obstruction of justice. Prior to sentencing, the State acknowledged that the counts of assault and domestic violence were allied offenses and should be merged. However, at a hearing conducted after a presentence investigation and in its termination entry, the trial court sentenced Mr. Blakely to identical sentences for both offenses, as well as an additional sentence for obstruction of justice, as described above.

II

{¶ 21}    Mr. Blakely raises three assignments of error on appeal. The first assignment of error states:

**The trial court erred by considering the prior inconsistent statements of the victim as substantive evidence, not only for purposes of impeachment.**

{¶ 22}    Mr. Blakely's argument relates to the use of Officer Sawmiller's testimony on rebuttal, in which he recounted the version of events provided by Mrs. Blakely at the hospital on the night of her injury; this version differed from Mrs. Blakely's testimony at trial.

{¶ 23}    Mr. Blakely acknowledges in his brief that Sawmiller's rebuttal testimony "was admissible for the purpose of impeachment of Mrs. Blakely." He also acknowledges that no discussion was had on the record as to whether Sawmiller's rebuttal testimony could "be used against Mr. Blakely as substantive evidence." There is nothing in the record to indicate that the trial court relied on the testimony as substantive evidence of Mr. Blakely's conduct on the night of Mrs. Blakely's injury. Mr. Blakely asserts, however, that the trial court must have relied on the testimony as substantive evidence because, without it, his

conviction was based on insufficient evidence.

{¶ 24}    The trial court concluded that Mrs. Blakely's trial testimony was "not credible at all."   There are a number of bases upon which the court could have reached this conclusion, including its responsibility in each case to observe the witnesses' demeanor, gestures and voice inflections, and to use these observations in weighing the credibility of their proffered testimony.  *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77,80, 461 N.E.2d 1273 (1984).   The court also reached this conclusion with respect to the testimony of Davis, about which no impeaching statements were offered.   We will not presume that the trial court relied on improper evidence, when there in nothing in the record to support such a conclusion.

{¶ 25}    Moreover, we reject Mr. Blakely's suggestion that the trial court must have improperly relied on Sawmiller's rebuttal testimony because, without it, there was insufficient evidence supporting his conviction.   We will discuss the sufficiency of the evidence under the second assignment of error.

{¶ 26}    The first assignment of error is overruled.

III

{¶ 27}    The second assignment of error states:

**The trial court erred in finding appellant guilty as the court lacked sufficient evidence to support such a finding.**

{¶ 28}    Mr. Blakely contends that there was insufficient evidence to support his convictions for domestic violence and assault because there was no evidence that he "*knowingly* caused physical harm" to his wife.

{¶ 29} An argument based on the sufficiency of the evidence challenges whether the State presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 30} The trial court relied primarily on the 911 tapes in its decision. In the recordings, Mrs. Blakely seems to yell information in response to some of the dispatcher's questions. After the dispatcher asked how Mrs. Blakely was injured, she can be heard saying "you, you" in the background. The trial court observed that this statement "could be direct, could be circumstantial evidence," and inferred that Mrs. Blakely was saying Mr. Blakely caused her injuries. The trial court also stated that, on track 2 of the 911 recordings, the judge heard "Mr. Blakely saying [']I threw her to the floor.[']"

{¶ 31} The trial court did not specifically refer to other evidence, but we note that the officers who responded to the scene observed a broken candle and overturned pottery in the kitchen, as well as blood on the top of a chair back. Such findings were arguably more consistent with an altercation than a fall.

{¶ 32} We have listened to the 911 call, as did the trial court and both attorneys (each of whom interpreted it differently). The judge explicitly found that track two included "Mr. Blakely saying I threw her to the floor." We will not overturn a trier of fact's finding of fact (i.e. what was said during the 911 call) unless it is against the manifest weight of the

evidence. *State v. Whitt*, 8th Dist. Cuyahoga No. 82293, 2003-Ohio-5934, ¶13; *State v. Johnson*, 1st Dist. Hamilton No. C-810036, 1980 WL 10092 (Nov. 4, 1981). The court's "factual findings will be overturned only if the reviewing court has the 'definite and firm conviction that a mistake has been committed.'" *U.S. v. Porter*, 99 Fed. Appx 672, 675, 2004 WL 1203038 (C.A. 6, 2004) (Internal citations omitted.).

**{¶ 33}** Although we may not have given the same weight to the 911 tapes that the trial court did or may not have reached the same conclusions as the trial court about what was said therein, these issues were for the trier of fact, here the trial court, to resolve. See, *e.g.*, *State v. Bundy*, 5th Dist. Richland No. 05 CA 50, 2006-Ohio-4062, ¶ 143, citing *State v. Hopkins*, 10th Dist. Franklin No. 05AP-338, 2009-Ohio-232, ¶ 28. ("[T]he jury here heard the 911 tape recording and, as trier of fact, was able to ultimately ascertain the contents of the 911 recording irrespective of [the State's] transcription.") Moreover, the trial court found the defense witnesses lacking in credibility, which was also its prerogative as the finder of fact. The State's evidence, if believed, was sufficient to support Mr. Blakely's conviction.

**{¶ 34}** The second assignment of error is overruled.

IV

**{¶ 35}** The third assignment of error states:

**Appellant did not obstruct official business as his mens rea did not conform with the essential element of acting purposely.**

**{¶ 36}** Mr. Blakely contends that his conviction for obstructing official business was supported by insufficient evidence, because the State did not establish that he had "a

purpose to prevent, obstruct, or delay" the performance of the officers in their official capacities. He asserts that his "only desire was to help his wife," and that "though he may have acted recklessly while being arrested[,] his actions did not rise to the level of purposely."

{¶ 37} R.C. 2921.31(A) provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Both police officers and paramedics satisfy the definition of a public official set forth at R.C. 2921.01(A).

{¶ 38} A person acts purposely when "it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 39} Even if the trial court believed, as Mr. Blakely does, that he was earnestly trying to get help for his wife when he called 911 and yelled at the police officers, there was ample evidence that Mr. Blakely actively and purposefully interfered with the officers' and medics' activities at the scene and with the officers' activities while transporting him to the hospital and ultimately to jail. According to the officers, Mr. Blakely yelled for an extended period in the kitchen while the officers and medics were attempting to assess Mrs. Blakely, interfering with her care. Mr. Blakely would not stand back when Sawmiller was trying to talk with Mrs. Blakely and, when Sawmiller attempted to handcuff Mr. Blakely, he "rotated"

and "turned" to prevent Sawmiller from doing so. After he was taken to the floor, Mr. Blakely tried to kick toward Sawmiller and Mrs. Blakely. These actions could not reasonably be construed as attempts to get help for Mrs. Blakely.

{¶ 40} After he was placed in the cruiser, while being transported to the hospital and at the hospital, Mr. Blakely continued his unruly behavior.

{¶ 41} The evidence presented at trial was sufficient to support the trial court's conclusion that Blakely purposely prevented, obstructed, or delayed the officers' and medics' performance of their official duties on the night in question.

{¶ 42} The third assignment of error is overruled.

V

{¶ 43} Although Blakely has not challenged his sentence on appeal, "we have previously held that a trial court's failure to merge allied offenses of similar import constitutes plain error." *State v. Williams*, 2d Dist. Greene No. 2011 CA 26, 2012-Ohio-3384, ¶ 8; *State v. Fairman*, 2d Dist. Montgomery No. 24299, 2011-Ohio-6489, ¶ 56. We note that the trial court erred in failing to merge Mr. Blakely's convictions for domestic violence and assault, because they are allied offenses of similar import. And the State specifically requested sentencing "on the domestic violence alone."

{¶ 44} The judgment will be affirmed in part, reversed in part, and remanded for the trial court to enter a corrected termination entry, to reflect the merger of the offenses of domestic violence and assault.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Troy B. Daniels
John S. Pinard
Hon. Deirdre E. Logan