[Cite as *State v. Smith*, 2011-Ohio-3288.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case Nos. 24264 |
| Plaintiff-Appellee | : | 24265 |
| | : | |
| v. | : | Trial Court Case Nos. 09-CR-4063/1 |
| | : | 09-CR-2679/2 |
| WAYMOND B. SMITH | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 30th day of June, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. #0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

LYNNE M. FLEMING, Atty. Reg. #0078520, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Waymond Smith appeals from his conviction and sentence in two criminal cases, which have been consolidated for purposes of appeal. In Montgomery County Common Pleas Court Case No. 2009 CR 02679/2, Smith pled no contest to

Aggravated Robbery (Deadly Weapon), with a firearm specification. Smith also pled no contest in Montgomery County Common Pleas Court Case No. 2009 CR 04063/1 to Aggravated Robbery (Physical Harm), Aggravated Robbery (Deadly Weapon), Aggravated Burglary (Physical Harm), Aggravated Burglary (Deadly Weapon), two counts of Aggravated Murder, and Tampering with Evidence. The charges in the latter case, other than the tampering charge, contained firearm specifications. Smith was found guilty of the charges in both cases. He was then sentenced to life in prison with the possibility of parole after 37 years in Case No. 04063/1, to be served concurrently with the nine-year sentence imposed in Case No. 02679/2.

{¶ 2} Smith contends that the trial court erred in denying motions to suppress that were filed in both criminal cases. Smith also contends that his no-contest pleas were not entered knowingly, voluntarily, and intelligently.

{¶ 3} We conclude that the trial court did not err in overruling the motions to suppress statements that Smith made after receiving *Miranda* warnings from the police. The record contains competent, credible evidence to support the trial court's finding that Smith was not coerced into making statements to the police. We further conclude that Smith's no-contest pleas were entered into knowingly, voluntarily, and intelligently. The record does not demonstrate that Smith was bewildered, as appellate counsel suggests, that he was incapable of fully understanding the proceedings or the consequences of his pleas, or that he was incapable of exercising his will with respect to his decision to plead no contest. Accordingly, the judgment of the trial court is Affirmed.

I

**{¶ 4}** The charges in these consolidated cases arose from events that occurred on August 15 and 16, 2009. On the earlier date, Smith committed an aggravated robbery (with a deadly weapon) at 1538 Almore Avenue in Dayton, Ohio. The next day, Smith trespassed in an occupied structure at 1529 Weaver Street in Dayton, Ohio with the intent to commit aggravated robbery. During the course of the robbery, an occupant of the house, David Green, was shot and killed.

**{¶ 5}** Detective Gaier of the Dayton Police Department was involved in investigating the robbery and murder that took place on August 16, 2009. During his investigation, Gaier learned that Delmar Maxwell and Waymond Smith were the perpetrators of that aggravated robbery and homicide.

**{¶ 6}** In November 2009, another detective, who was investigating the August 15, 2009 robbery, traveled to Greensboro, North Carolina, to take custody of Demar Maxwell, who was a suspect in that case as well. After Maxwell returned to Dayton, Ohio, Gaier then interviewed Maxwell on three occasions – November 25 and 27, 2009, and December 1, 2009.

**{¶ 7}** At some point, a warrant was issued for Smith's arrest in connection with the August 15, 2009 robbery. Gaier also placed a "lockup broadcast" for Smith with regard to Green's murder. Subsequently, on December 2, 2009, police came in contact with Smith, arrested him, and transported him to the Safety Building in Dayton, Ohio. Gaier and Detective Rebecca Rose then made contact with Smith in an interview room. Smith appeared coherent, was able to understand what he was being told, and did not appear to be under the influence of any drugs or alcohol.

{¶ 8} When Gaier initially attempted to go over the pre-interview form, Smith learned that he was being interviewed about a murder. Smith became uncooperative and tried to prevent Gaier from reading him his *Miranda* rights. When Gaier attempted to read each right, Smith interrupted to say that he had not done anything, and that Gaier did not know what he was talking about.

{¶ 9} Smith did not ask for a lawyer and did not tell Gaier that he did not want to talk to him. Instead, Smith kept saying that he had not done anything. After about ten minutes, Gaier told Smith that he was not going to question him, that he was under arrest for murder, and that Gaier would book him into the jail. Gaier and Rose then left the interview room, leaving Smith alone.

{¶ 10} Gaier went to a nearby computer and began the booking process. Within several minutes, Smith knocked on the interview room door, and told Rose that he wanted to speak with them and was willing to go over his rights. Gaier and Rose returned to the interview room and read Smith the *Miranda* rights. Smith waived his rights, after indicating both verbally and in writing that he understood them. Smith was then interviewed for one-and-a-half to two hours. Smith did not ask to stop the interview at any time, nor did he request a lawyer.

{¶ 11} Smith did not tell the officers during the interview that he was not feeling well, nor did he say that he had mental health issues. Smith did say that he was using half a gram of heroin a day at the time of the incident, but he did not appear to be under the influence of any drugs of abuse when he was interviewed. Smith stated during the interview that he had some back pain and had been shot in the past. Gaier did not ask Smith if he took any

medications, because he normally does not ask people that. Smith appeared normal and gave logical responses to questions.

{¶ 12} No written statement was made, and no audio or video tapes were made of the interview. At one point during the interview, Gaier wrote the word "Bullshit" on a yellow tablet and handed it to Smith. Smith took the paper from Gaier and showed it back to him. Gaier denied telling Smith that "twelve jurors were not going to believe this B-S."

{¶ 13} At the end of the interview, Smith was booked into the Montgomery County Jail. Smith was subsequently indicted for Aggravated Robbery in Case No. 04063/1 and for Aggravated Robbery, Aggravated Burglary, Aggravated Murder, and the remaining charges in Case No. 02679/2. Smith filed motions to suppress in both cases, contending that statements obtained by the police in their custodial interrogation were obtained without the required procedural safeguards and violated his privilege against self-incrimination.

{¶ 14} The trial court held a combined suppression hearing on both motions in February 2010. At the hearing, the court heard testimony only from Detective Ritchey, who had transported Maxwell from North Carolina, and from Detective Gaier, who had interviewed both Maxwell and Smith. Smith did not present any witnesses or testimony. Subsequently, the trial court overruled the motions to suppress, and set the cases for trial.

{¶ 15} In August 2010, Smith pled no contest to the charges, as indicated above, and was sentenced accordingly. Smith appeals from his convictions and sentences.

II

{¶ 16} Smith's First Assignment of Error is as follows:

{¶ 17} "THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION TO SUPPRESS."

{¶ 18} Under this assignment of error, Smith contends that the trial court erred in denying his motion to suppress, because his confession to police was involuntary under the totality of the circumstances.

{¶ 19} Standards for reviewing decisions on motions to suppress are well established. In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford* (1994), 93 Ohio App.3d 586, 592 (citation omitted). As a result, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id.

{¶ 20} In a suppression hearing, the State has the burden of proving by a preponderance of the evidence that the defendant's *Miranda* rights were knowingly, intelligently, and voluntarily waived. *Colorado v. Connelly* (1986), 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473. Voluntary waiver and voluntary confession are separate issues, but " 'the same test is used to determine both, i.e., whether the action was voluntary under the totality of the circumstances.' " *State v. Treesh*, 90 Ohio St.3d 460, 472, 2001-Ohio-4, citing *State v. Clark* (1988), 38 Ohio St.3d 252. "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the

length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards* (1976), 49 Ohio St.2d 31, paragraph two of the syllabus.

{¶ 21} We do not reach the issue of totality of the circumstances, however, unless we find that the police used a coercive tactic. *State v. Perez*, 124 Ohio St.3d 122, 131, 2009-Ohio-6179, ¶71. Accord *State v. Swopes*, Montgomery App. No. 24044, 2011-Ohio-2072, ¶34.

{¶ 22} Smith argues that the police coerced his waiver, due to "overreaching." In support of this contention, Smith alleges that the arresting officers told him that he was "breathing his last air," and that Gaier said that there would be a lethal injection in the case. There is no proof, however, that these remarks occurred. When asked about the remarks in the suppression hearing, Gaier denied any knowledge of the arresting officer's remarks, and denied saying anything about a lethal injection.

{¶ 23} In advancing the overreaching argument, Smith also points to evidence that he was a heroin user. There is no evidence, however, that Smith was under the influence of drugs when he was interviewed. The only evidence that was elicited is that Smith said he was a heroin user, and had been using heroin at the time of the alleged robberies, which occurred several months earlier. Gaier indicated that Smith appeared normal and answered questions logically while he was being interviewed.

{¶ 24} Coercive tactics can include matters like threats to arrest members of a suspect's family, or physical abuse, or deprivation of food, medicine, or sleep. *Perez*, 2009-Ohio-6179, at ¶72; *State v. Clark* (1988), 38 Ohio St.3d 252, 261. There is no evidence

that coercive tactics occurred in the case before us.

{¶ 25} Smith also relies heavily on a decision by the Fourth District Court of Appeals, which affirmed the suppression of statements where a deputy made repeated misrepresentations and used other coercive tactics against a defendant who had low mental aptitude. See *State v. Baker* (Nov. 2, 1995), Athens App. No. 94CA1644. Again, no evidence was submitted in the case before us to indicate that the police used coercive tactics or misrepresentation, and there is no evidence that Smith had a low mental aptitude. In fact, the evidence at the plea hearing indicates that Smith was 30 years old and had reached his junior year in college.

{¶ 26} Finally, even if Detective Gaier had accused Smith of lying, admonitions to suspects to tell the truth are not coercive. See, *e.g.*, *State v. Knight*, Clark App. No. 04-CA-35, 2008-Ohio-4926, ¶111.

{¶ 27} We note that the trial court accepted Gaier's testimony that Smith appeared coherent and normal and did not appear under the influence of any drugs. The court concluded that Smith had expressly waived his rights with full awareness of the implications. The trial court further concluded that Smith did not suffer any unconstitutional deprivation when he met with detectives.

{¶ 28} The trial court's findings are supported by competent, credible evidence. The only witnesses were police officers, and Detective Gaier testified that Smith appeared normal, spoke logically, and waived his rights after being fully advised.

{¶ 29} Smith's First Assignment of Error is overruled.

III

{¶ 30} Smith's Second Assignment of Error is as follows:

{¶ 31} "APPELLANT'S PLEAS WERE NOT OFFERED KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY AS REQUIRED BY LAW."

{¶ 32} Under this assignment of error, Smith contends that his pleas were not offered knowingly, intelligently, and voluntarily, because the medications he was taking affected his ability to understand the implications of tendering his plea, and because he had not taken one of several prescribed medications in the morning before his plea.

{¶ 33} A defendant's plea in a criminal case "must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle* (1996), 74 Ohio St.3d 525, 527. With regard to plea requirements, Crim.R. 11(C)(2) provides that:

{¶ 34} "In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

{¶ 35} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

{¶ 36} "(b) Informing the defendant of and determining that the defendant understands

the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

{¶ 37} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

{¶ 38} In the case before us, the trial court properly addressed the defendant regarding the above issues.   With regard to medication, the following colloquy occurred:

{¶ 39} "THE COURT:   Are you currently under the influence of any drugs, alcohol or medication?

{¶ 40} "THE DEFENDANT:   I take medication.

{¶ 41} "THE COURT:   What medication do you take?

{¶ 42} "THE DEFENDANT:   I take three different medications, but since I've been in here, I can only get two.

{¶ 43} "THE COURT:   I'm sorry?

{¶ 44} "THE DEFENDANT:   Three.   Three different medications, but since I've been in here, I've only been allowed to get two of them.

{¶ 45} "THE COURT:   All right.   Now, I have to make sure that the record is clear. What are the medications?   When did you last take them?

{¶ 46} "THE DEFENDANT:   I take Ativan every – every day, twice a day. Klonopin's in the morning.   Klonopin's at night.   I'm supposed to take trazodone, tramodol,

Prefrin, Cymbalta three times a day, every day.   That's what my body's used to.

{¶ 47} "THE COURT:   All right. Now, the fact that – and you took your medication this morning?

{¶ 48} "THE DEFENDANT:   No.   They just – they didn't do a medicine call for us.

{¶ 49} "THE COURT:   All right.

{¶ 50} "THE DEFENDANT:   I haven't had it today.

{¶ 51} "THE COURT:   All right.   So you're not –

{¶ 52} "THE DEFENDANT:   I'll get them when I go back.

{¶ 53} "THE COURT: The key question is, when we ask, are you under the influence of any drugs, alcohol or medication, is you're not feeling high, or you're not –

{¶ 54} "THE DEFENDANT:   I'm not.   I don't – I'm not – I'm okay.

{¶ 55} "THE COURT:   All right.   So you're – so the answer to the question is, to the question, are you under the influence of any drugs, alcohol or medication should be no.   Is that correct?   And I'm asking you because –

{¶ 56} "THE DEFENDANT:   I don't have any alcohol.   I take medication that is prescribed by the doctor.

{¶ 57} "THE COURT:   All right.   But listen to my question.   The question is, are you under the influence?   You can take medicine.

{¶ 58} "THE DEFENDANT:   I take it at night, so –

{¶ 59} "THE COURT:   Listen to the question.

{¶ 60} "THE DEFENDANT:   Sorry.   I don't –

{¶ 61} "THE COURT:   Okay.   That's why I want you – I'm asking it.   It is a precise

question and I need a precise answer. You can take medicine. The question is, are you under the influence of it, meaning, are you high? Do – are you unable to know where you are?

{¶ 62} "THE DEFENDANT: No, ma'am.

{¶ 63} "THE COURT: All right. So are you under the influence?

{¶ 64} "THE DEFENDANT: No, ma'am.

{¶ 65} "THE COURT: All right. Very well. Thank you. Are you – do you have any mental or physical problems that would prevent you from understanding what's going on?

{¶ 66} "THE DEFENDANT: Well, yes. That, I know so.

{¶ 67} "THE COURT: All right. Again, what are the problems that you've been diagnosed with?

{¶ 68} "THE DEFENDANT: I'm bipolar schizophrenic, you know.

{¶ 69} "THE COURT: All right. So are you on medication for them?

{¶ 70} "THE DEFENDANT: Yes.

{¶ 71} "THE COURT: All right. So, at this point, are you hearing voices?

{¶ 72} "THE DEFENDANT: No, ma'am.

{¶ 73} "THE COURT: Is there anything that would prevent you from understanding what's going on? You've noted to me that you have problems, and we'll accept that. Is there anything about those problems that would prevent you from understanding that we're going through with the plea at this point?

{¶ 74} "THE DEFENDANT: If I didn't understand, just that you know, I would –

{¶ 75} "THE COURT: All right. Let's go off the record. Well, you go talk to your

attorney.

**{¶ 76}** "THE DEFENDANT:   Yeah, man.   Just to get – just as well to get it over with.

**{¶ 77}** "THE COURT:   No.

**{¶ 78}** "(Counsel Confer)

**{¶ 79}** " * * * *

**{¶ 80}** "THE COURT:   All right.   Do you have any mental or physical problems that would prevent you from understanding what's going on?

**{¶ 81}** "THE DEFENDANT:   No."   Transcript, pp. 72-75.

**{¶ 82}** The plea hearing took place at 9:30 a.m., and Smith had missed only his morning dose of medicine.   The record does not demonstrate that Smith was bewildered, as appellate counsel suggests, or that he was incapable of fully understanding the proceedings or the consequences of his pleas.   Compare the colloquy and confusion of the defendant in *State v. Nickell*, Wood App. No. WD-07-015, 2008-Ohio-1571, ¶19-103.   In *Nickell*, the Sixth District Court of Appeals observed that:

**{¶ 83}** "Thus, even with the repetitive coaxing and questioning, appellant was unable to sufficiently focus on and comprehend the nature and objectives of the proceedings.   Many of appellant's answers were non-responsive, indicating that she clearly did not understand that under a no contest plea, she would likely be found guilty, or even why she had been charged with the offense.

**{¶ 84}** "Even the court itself expressed that it had difficulty discerning whether appellant's inability to comprehend was due to lack of education or mental health issues.

Nothing in the record indicates that appellant was 'faking it,' nor did the trial court make such a finding. Instead, we conclude that appellant's ability to understand or to become 'educated' as to the legal issues involved was inextricably intertwined with her mental health and medication issues. Consequently, we conclude that the record shows that, due to her mental illness and somewhat limited cognitive abilities, appellant was unable to fully participate in her defense or to appreciate the ramifications of the no contest plea and subsequent conditions of sentencing." Id. at ¶117-118.

{¶ 85} In addition, the Sixth District Court of Appeals noted that the defendant "continued to protest her innocence during both the plea and sentencing hearings, offering explanations which contradicted the state's evidence, and asking that the court talk to her doctor." Id. at ¶129. In contrast, Smith's statements at the plea hearing indicate that he was well aware of the matters itemized in App. R. 11(C)(2).

{¶ 86} Accordingly, Smith's Second Assignment of Error is overruled.


IV

{¶ 87} Both of Smith's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .


FROELICH and HALL, JJ., concur.

Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt

Lynne M. Fleming
Hon. Frances E. McGee